ASSLY SAYYAR, ATTORNEY AT LAW INC.
ASSLY SAYYAR, ESQ. (SBN 255145)
2348 Foothill Drive
Vista, California 92084
Tel: 760-542-8717
Fax: 760-444-3560
assly@vistalawyer.net

*Attorneys for Cadles of West Virginia, LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADLES OF WEST VIRGINIA, LLC, | Case No. **'20 CV2534 TWR WVG** |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| MARIO ALVAREZ also known as MARIO ALVAREZ JR.; GEORGE ALVAREZ; NICHOLAS ALVAREZ; MAGALI ALVAREZ; DARCI ALVAREZ; BALESIA TOWERS, INC.; MARIO R. ALVAREZ SR. CANCER FOUNDATION; THE ALVAREZ & ALVAREZ IRREVOCABLE TRUST DATED JANUARY 31, 2001 by and through its Trustee(s) MAGALI ALVAREZ, GEORGE ALVAREZ and/or NICHOLAS ALVAREZ and/or DOE DEFENDANTS; KONA BEACH BUNGALOWS, LLC; 16919 GOING MY WAY TRUST by and through its Trustee(s) KENNETH HOBBS; and DOES I through X; and ROE CORPORATIONS XI through XX; | |
| Defendants. | |

COMES NOW Plaintiff CADLES OF WEST VIRGINIA, LLC, and for its Complaint against

the above named Defendants alleges and assert as follows:

///

# I.

## PARTIES AND JURISDICTION

1.     At all times relevant hereto, Plaintiff CADLES OF WEST VIRGINIA, LLC, (hereinafter "Plaintiff") is an Ohio Limited Liability Company.

2.     At all times relevant hereto, Defendant MARIO ALVAREZ also known as MARIO ALVAREZ JR. (hereinafter "MARIO JR"), is an individual residing and/or doing business in the state of California, in the city of San Diego.

3.     At all times relevant hereto, Defendant GEORGE ALVAREZ (hereinafter "GEORGE"), is an individual residing and/or doing business in the state of California, in the city of San Diego.

4.     At all times relevant hereto, Defendant NICHOLAS ALVAREZ (hereinafter "NICHOLAS"), is an individual residing and/or doing business in the state of California, in or around the city of Laguna Beach.

5.     At all times relevant hereto, Defendant MAGALI ALVAREZ (hereinafter "MAGALI"), is an individual residing and/or doing business in the state of California, in or around the city of Laguna Beach.

6.     At all times relevant hereto, Defendant DARCI ALVAREZ (hereinafter "DARCI"), is an individual residing and/or doing business in the state of California, in the city of San Diego.

7.     At all times relevant hereto, Defendant BALESIA TOWERS, INC. (hereinafter "BALESIA"), is a Delaware registered corporation that does business in the state of California, in or around the counties of San Diego and/or Los Angeles. Upon information, investigation, and belief, BALESIA is in the business of development of cell phone towers in the United States in

coordination and cooperation with certain other parent, affiliate, and subsidiary entities sharing the Balesia name established and operating in other countries.

8.     At all times relevant hereto, the MARIO R. ALVAREZ SR. CANCER FOUNDATION (the "FOUNDATION"), is a California corporation conducting business in the state of California, in or around Rancho Santa Fe, San Diego County. MARIO JR. is the President and CEO of the FOUNDATION.

9.     Upon information, investigation, and belief, the FOUNDATION represents that it is a "non-profit 501c3" and any donation made to the FOUNDATION is "tax-deductible." The FOUNDATION was formed on November 19, 2019.

10.     At all times relevant hereto, THE ALVAREZ & ALVAREZ IRREVOCABLE TRUST DATED JANUARY 31, 2001 (the "ALVAREZ TRUST") is a trust formed in or around Los Angeles, California and either has or recently had the following person or persons acting as trustees: MARIO JR. MAGALI, NICHOLAS, and/or GEORGE. Upon information, investigation, and belief other trustees of the ALVAREZ TRUST during relevant times may have included Mario Alvarez Sr., or such other persons as are not known to Plaintiff at this time but who are identified as DOE Defendants. The ALVAREZ TRUST was formed by Settlors, Mario Alvarez Sr. and MAGALI.

11.     The ALVAREZ TRUST purports to be irrevocable but based on investigation, information, and belief any irrevocable status once claimed has been waived, forfeited, destroyed, and/or abandoned under law and by fact based on the acts and omissions of MAGALI and MARIO JR. in the operation and management of the ALVAREZ TRUST.

12.     At all times relevant hereto, KONA BEACH BUNGALOWS, LLC ("KONA BB") is a Delaware limited liability company that upon information, investigation, and belief operates its

business in the state of California, in or around the counties of San Diego and Los Angeles. KONA BB was formed on May 5, 2011.

13.     Past and current managers of KONA BB are still under investigation and are being discovered but information located to date demonstrates past and/or current managers include, but are not limited to, MARIO JR., DARCI, MAGALI, NICHOLAS, and/or DOE and ROE Corporation Defendants, who conduct and engage in KONA BB business operations in and around the counties of San Diego and Los Angeles counties of the state of California.

14.     Past and current members of KONA BB are still under investigation and are still being discovered but may include, but are not limited to, MARIO JR., DARCI, MAGALI, the ALVAREZ TRUST, GEORGE, NICHOLAS, and/or DOE and ROE Corporation Defendants.

15.     At all times relevant hereto, 16919 GOING MY WAY TRUST by and through its Trustee(s) KENNETH HOBBS ("16919 TRUST") is a trust formed and owning and managing real property located at 16919 Going My Way, San Diego, CA 92127 (the "Going My Way Property"). Upon information, investigation, and belief, the trust was formed and is managed from San Diego, California.

16.     The true names and capacities, whether individual, corporate, associate or otherwise, or Defendant herein designated as DOES I through X and ROE CORPORATIONS XI through XX inclusive, are unknown to the Plaintiff at this time, who therefore sue said Defendant by such fictitious names. These unknown persons or entities may be successors in interest to the named Defendants, their trustees, agents, employees, co-conspirators, additional trusts both irrevocable and revocable (including, but not limited to other trusts and corporate entities wherein assets have been concealed by and through certain fraudulent transfers and the Balesia "family" of companies

including Balesia Peru and other foreign entities identified herein), alter egos, recipients of property and assets fraudulently transferred, parent companies, affiliates, subsidiaries, and/or others related to the acts and omissions set forth therein. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities as they are ascertained and their connection with this case established and upon a showing that joinder is necessary.

17.    Mario Alvarez Sr. and MAGALI were married.

18.    MAGALI's brother is Isidoro Gutierrez.

19.    GEORGE and MARIO JR. and Edward Alvarez are the biological children of Mario Alvarez Sr. and MAGALI. Edward Alvarez has passed away.

20.    Mario Alvarez Sr. died on May 16, 2005.

21.    NICHOLAS is the biological son of MARIO JR.

22.    MARIO JR. is legally married to DARCI.

23.    Upon information, investigation, and belief MARIO JR. and DARCI live and/or reside together in real property located in San Diego, California (purportedly owned by the 16919 TRUST), real property located in Miami Beach, Florida, (purportedly owned by the ALVAREZ TRUST), and real property located in Kona, Hawaii (purportedly owned by the ALVAREZ TRUST and managed as a high-end vacation rental by KONA BB, MARIO JR., NICHOLAS, MAGALI, and/or DARCI).

24.    Benefits taken by MARIO JR. to support his family and his lifestyle, his business enterprises and day to day expenses benefit DARCI, his wife.

25.    MARIO JR. and Kenneth Hobbs are long time friends. Kenneth Hobbs is identified as the Secretary of the FOUNDATION. Kenneth Hobbs has self identified as the Trustee of the 16919

TRUST. Kenneth Hobbs has self identified as the attorney for MARIO JR., various family members of MARIO JR., and various business interests referenced in this Complaint.

26.     Upon information, investigation, and belief, the ALVAREZ TRUST is the alter ego of MAGALI, GEORGE, and/or MARIO, JR.

27.     Upon information, investigation, and belief, KONA BB is the alter ego of DARCI, MAGALI, NICHOLAS, GEORGE, the ALVAREZ TRUST, and/or MARIO JR.

28.     Upon information, investigation, and belief, BALESIA is the alter ego of all other entities that make up the Balesia "family" of companies, and the alter ego of MARIO JR., GEORGE, the ALVAREZ TRUST, and NICHOLAS.

29.     Upon information, investigation, and belief, the FOUNDATION is the alter ego of MARIO JR.

30.     Upon information, investigation, and belief, the 16919 TRUST is the alter ego of MARIO JR.

31.     There is such a tangled unity of interests and financials by and between the Defendants, and such a disregard for corporate, trust, and charity formalities at law as to make the Defendants, each of them, the alter egos of each other. Information discovered by Plaintiff to date has found that the named Defendants act with such a unity of financial interests, transferring funds and properties into each other's hands, paying the debts mostly incurred in MARIO JR.'s name while ensuring that MARIO JR. appears to own nothing and have no source of income, as to be indistinguishable from one another and to be alter egos of one another such that it would be against the interests of justice to adhere to the corporate and trust fictions that the Defendants ignore at whim.

32.     This Court had jurisdiction over this action by virtue of the diversity of citizenship between the parties pursuant to 28 U.S.C. Section 1332. Plaintiff is incorporated and has its principal place of business in the state of Ohio. Defendants are either individuals who upon information, investigation and belief reside in California or are entities who upon information, investigation, and belief conduct business in the state of California. The amount in controversy and damages sought by Plaintiff exceed the sum of $75,000.00.

33.     Venue is proper in this district pursuant to 28 U.S.C. Section 1391 because a substantial part of the events giving rise to the claims occurred in this district and a substantial number of the Defendants either reside in and/or do business in this district, availing themselves of the laws and protections of the State of California, Southern District.

## II.

## GENERAL ALLEGATIONS

### A.     UNDERLYING JUDGMENT, CLAIM, AND DEBT

34.     On March 14, 2008, Plaintiff AmTrust Bank brought suit against certain named defendants MARIO JR., Luis R. Trujillo, and California Cove at San Elijo, LLC in the Superior Court of the State of California, County of San Diego Case No. 37-2008005244-CU-BC-NC (the "Initial California Action").

35.     MARIO JR. was duly served in the Initial California Action with proof of service filed on April 11, 2008. MARIO JR., by and through his attorney appeared, filed an answer and filed a cross-complaint on May 23, 2008.

36.     Subsequently, on December 14, 2009, the Receiver for Plaintiff AmTrust Bank, the Federal Deposit Insurance Corporation ("FDIC"), removed the case to the United States District Court, Southern District of California, Case No. 3:09-CV-2787-JAH(WMC) (the "Judgment Litigation").

37.     The Judgment Litigation sought recovery of damages arising from a breach of written contract and breach of the implied duty of Good Faith and Fair Dealing (#1 in the Judgment Litigation). The written contract in question was a loan agreement with related ancillary agreements pertaining to certain developed lots and/or partially developed lots within the project known as California Cove at San Elijo in San Marcos, San Diego county, California.

38.     MARIO JR. was named in the action in his capacity as an unconditional personal guarantor of the loan which was in the original principal amount of $35,000,000.00. (#1 in the Judgment Litigation).

39.     On November 21, 2011, a "Judgment Against Mario Alvarez and California Cove at San Elijo, LLC" ("Judgment") was entered. (#124 in the Judgment Litigation). The Judgment Litigation was formally deemed "closed" by the United States District Court Southern District of California on July 25, 2012, but the Judgment remains active and post judgment discovery has continued.

40.     The Judgment was in the amount of $24,620,188.41 with interest accruing and awarded thereon. The Judgment was in favor of AmT CADC Venture, LLC and against MARIO, JR. and other named defendants, jointly and severally.

41.     AmT CADC Venture, LLC assigned all rights, title and interest in the Judgment to assignee Cadles of West Virginia, LLC effective November 17, 2016. An "Acknowledgment and Assignment of Judgment" was filed in the Judgment Litigation on January 18, 2017 reflecting this assignment (#130 in the Judgment Litigation).

42.     Plaintiff further domesticated the Judgment in the United States District Court, Southern District of Florida, Case No. 17-MC-20988 (the "Florida Judgment Litigation"), in the United States District Court of  Delaware, Case No. 19-MC-360(the "Delaware Judgment Litigation"), and the United States District Court of Hawaii, Case No. MC17-00070-DKW-RLP (The "Hawaii Judgment

Litigation"),  and began post-judgment discovery in multiple states to locate assets and property of MARIO JR. to satisfy the Judgment.

43.     To date, the Judgment remains unsatisfied. As of December 31, 2020 the following amounts remain due and owing by MARIO JR. to Plaintiff under the terms of the Judgment:

      a.     Judgment Principal of $24,620,188.41

      b.     Accrued interest of $268,118.06 which continues to accrue at a rate of $82.07 per diem or 0.12% per annum

For a total of $24,888,306.47. This amount does not include any lawfully permissible post judgment costs or fees.

**B.      DISCOVERY OF FRAUD**

44.     After engaging in post-judgment discovery in the Judgment Litigation, the Florida Judgment Litigation, the Hawaii Judgment Litigation, and the Delaware Judgment Litigation, it became apparent to Plaintiff that Judgment Debtor in the Judgment Litigation, MARIO JR., had and continues to engage in a pattern of conduct whereby he has fraudulently transferred his assets to hide and conceal them from lawful collection, and has engaged in a conspiracy to fraudulently transfer his assets with the aid, assistance, and active and intentional knowledge and  participation of all of the named Defendants in this action.

45.     Plaintiff has also discovered that Plaintiff has not been and/or is not the only Judgment Creditor seeking collection against MARIO JR. Court records in California state court show that other litigations and actions have been brought against MARIO JR. to recover debts due and owing prior to the Initial California Action, the Judgment Litigation and the Judgment entry itself. Attempts

to obtain hard copies of these court records continues and has been delayed due to court closures caused by the COVID-19 pandemic.

46.     Plaintiff first became aware of the existence of fraud in or around January, 2020, as part of its ongoing efforts to collect upon the Judgment. In an effort to gain further information in support of its belief, Plaintiff conducted additional post judgment discovery in the Judgment Litigation, the Florida Judgment Litigation, the Hawaii Judgment Litigation, and the Delaware Judgment Litigation. Subpoenas were sent and served to obtain business and financial records.

47.     The deposition of MAGALI taken for post judgment collection purposes in the Judgment Litigation on February 26, 2020 further supported Plaintiff's belief that fraudulent transfers had taken place and MARIO JR. had been and continues to be engaged in efforts to fraudulently conceal his assets, property, and income from lawful collection by creditors including, but not limited to, Plaintiff.

48.     Additional post judgement discovery was served in the Judgment Litigation and the Florida Judgment Litigation, the Hawaii Judgment Litigation, and the Delaware Judgment Litigation to gather information related to the nature of the suspected fraud. Some depositions took place and some subpoenas were responded to by deponents and witnesses. Some subpoenas for documents were the subject of motion practice and objection. Some information has proven extremely difficult to obtain because ALVAREZ TRUST and BALESIA (to name just a few deponents) have objected to the production of information falsely claiming to have no connection to MARIO JR. and his obligations under the Judgment.

49.     Other critical depositions such as the post judgment examination of NICHOLAS and MARIO JR. were noticed but have been continued and rescheduled due to COVID-19 restrictions in the state

of California. The post judgment examination of NICHOLAS and MARIO JR. and are still pending. Plaintiff intends to take those depositions as soon as legally possible after making multiple attempts to take said depositions in 2020. Other subpoenas and deposition notices were unable to be served, in part, due to an inability to locate witnesses due to COVID-19 governmental restrictions.

50.     While there is state law tolling statutes of limitations due to the COVID-19 pandemic and related governmental restrictions in place, in an abundance of caution, Plaintiff files this Complaint now.

51.     Plaintiff expressly reserves the right to amend this Complaint with further details of exactly who, what, when and how assets were concealed beyond what is pled in this document as further information is discovered and other post judgment discovery pending in the Judgment Litigation can safely go forward in light of pandemic restrictions.

52.     After engaging in post judgment discovery in the Judgment Litigation, the Florida Judgment Litigation, the Hawaii Judgment Litigation, and the Delaware Judgment Litigation, it has become apparent that the ALVAREZ TRUST, BALESIA, the FOUNDATION, and KONA BB have acted as the personal "piggy bank" of MARIO JR.

53.     MARIO JR., with the aid, assistance and active and intentional knowledge and participation of all of the named Defendants in this action. Defendants have blurred all lines of corporate, trust, and non-profit formalities to allow MARIO JR. to fraudulently transfer and conceal assets from collection by Plaintiff on the Judgment.

54.     The ALVAREZ TRUST, BALESIA, the FOUNDATION, KONA BB, and the 16919 TRUST (the "Defendant Entities") are how MARIO JR. has a place to live in California, in Hawaii, and in Florida with his wife DARCI and minor son.

55.    The Defendant Entities are how MARIO JR. pays his day to day living expenses by paying his creditors directly, goes on vacation, purchases both necessities and luxuries.

56.    It is through the knowing and intentional aid and assistance of NICHOLAS, GEORGE and MAGALI that the Defendant Entities conceal assets and property and earnings of MARIO JR. from lawful collection while ensuring he and DARCI are financially supported by and through their acts.

57.    MARIO JR. was on actual notice of the claims against him and the possibility of judgment being entered against as early as April 11, 2008, if not sooner. Judgment was entered against him pursuant to stipulation on November 21, 2011 (#123 and #124 of the Judgment Litigation).

58.    Despite this actual notice, MARIO JR. has knowingly and intentionally engaged in the unlawful conduct pled herein.

**C.    THE ALVAREZ TRUST**

59.    Documents obtained by Plaintiff pursuant to subpoena as part of post judgment discovery show that the ALVAREZ TRUST was formed in Irvine, California by Mario Alvarez Sr. and MAGALI on January 31, 2001.

60.    The ALVAREZ TRUST Short Form Trust expressly states that "This Declaration of Trust is irrevocable. The Settlors do not have the power to alter, amend or revoke such Declaration of Trust or to replace the Trustee or add additional Trustees."

61.    The ALVAREZ TRUST was formed as an irrevocable trust, with MARIO JR. named as the Trustee. The ALVAREZ TRUST allows for the following persons only to act as successor trustees in the following order of priority if MARIO JR. Is unable or unwilling to act as trustee: GEORGE, Isidoro Gutierrez, and Edward Alvarez.

62.     Despite the terms of this supposedly irrevocable ALVAREZ TRUST, MAGALI has signed loan and other mortgage documents in her capacity as "trustee" of the ALVAREZ TRUST beginning as early as July 29, 2009, if not earlier.

63.     Upon information, investigation, and belief, any irrevocable status that the ALVAREZ TRUST once claimed to have has been forfeited by the conduct of MAGALI acting as trustee of her own settled "irrevocable" trust in direct violation of law and the terms of the ALVAREZ TRUST.

64.     MARIO JR. in his capacity as trustee has also signed at least one ancillary loan document representing that he was a Trustee of a "revocable" trust known as the ALVAREZ TRUST as of January 31, 2001.

65.     Upon information, investigation, and belief, MARIO JR. is either a direct or a contingent beneficiary of the ALVAREZ TRUST.

66.     Upon information, investigation, and belief, a review of public property records show that real property once in the name of MARIO JR., once encumbered by loans benefitting MARIO JR. personally, were transferred into the ALVAREZ TRUST. Thereafter the ALVAREZ TRUST would hold title to said real property and repay the loan obligations encumbering said real property.

67.     As of December 19, 2005, MARIO JR. completed and executed certain Wells Fargo Home Mortgage Uniform Residential Loan Application to obtain a loan on real property known as 401-405 Hill Street, Laguna Beach, CA 92651 (the "Laguna Beach Property").

68.     As part of filling out this Uniform Residential Loan Application, MARIO JR. claimed sole ownership and title to the Laguna Beach Property. MARIO JR. also claimed sole ownership and title to 75-6130 Alii Drive, Kailu Kona, HI 96740 (the "Kona Property").

69.     As part of obtaining that loan, on December 8, 2005, Certified Public Accountant Norman L. Rosenberg provided Wells Fargo Home Mortgage with correspondence representing that Rosenberg's long-time client MARIO JR. "receives expense reimbursements form Trussnet Corporation, which is deposited into the Alvarez and Alvarez Trust. The trust then pays Mr. Alvarez's American Express card bills."

70.     MARIO JR. obtained the home mortgage loan of $1,600,000.00 in his own name and as of December 21, 2005 was the sole owner and mortgagee of the Laguna Beach Property.  He signed loan documents and a deed of trust in or around December 15, 2005.

71.     Thereafter, MARIO JR. transferred and assigned all interest he had in the Laguna Beach Property to the ALVAREZ TRUST. MARIO JR. was acting as trustee of the ALVAREZ TRUST at the time. Thereafter, the ALVAREZ TRUST paid the mortgage debt of MARIO JR.

72.     On July 2, 2001, MARIO JR. transferred and assigned all interest he had in the Kona Property to the ALVAREZ TRUST. MARIO JR. was acting as trustee of the ALVAREZ TRUST at the time. Thereafter, the ALVAREZ TRUST paid the mortgage debt of MARIO JR.  By and through this transfer MARIO JR. was simultaneously acting as a Settlor and Trustee and a Beneficiary of the Trust making the ALVAREZ TRUST a self settled trust.

73.     Upon information, investigation, and belief, the Laguna Beach Property and the Kona Property transaction history reflect a larger and ongoing pattern and practice whereby MARIO JR. purchases assets, encumbers assets, and then transfers said assets into entities he controls such as the ALVAREZ TRUST whereby the ALVAREZ TRUST then conceals the asset for MARIO JR. from creditors including, but not limited to, Plaintiff, and then picks and chooses which debts, obligations, and expenses of MARIO JR. to repay.

74.     Upon information, investigation and belief, both before and after being on notice of the Initial California Action and Judgment Litigation, the ALVAREZ TRUST has been utilized by MARIO JR. to conceal assets once belonging to MARIO JR., to help MARIO JR. appear to be destitute and without collectable assets, and to pay debts and obligations incurred for the benefit (either directly or indirectly) of MARIO JR. Being the one time trustee of the entity and upon information, investigation, and belief either a direct or contingent beneficiary of the ALVAREZ TRUST, the entity is one of many hiding places that MARIO JR. has utilized to avoid lawful collection. Upon information, investigation, and belief, the Laguna Beach Property and the Kona Property were just two examples of what appears to be a common and ongoing intentional fraudulent pattern and practice of transfer and concealment by MARIO JR. that continues to this day.

75.     Post judgment discovery continues in the Judgment Litigation and the various domesticated suits in Hawaii, Delaware, and Florida to uncover more specifics beyond public records of how the ALVAREZ TRUST has operated as MARIO JR.'s shield from creditors including Plaintiff. Such additional information will likely be discovered in the possession and control of MAGALI, MARIO JR. and the ALVAREZ TRUST.

**D.     BALESIA**

76.     Upon information, investigation, and belief, BALESIA is the U.S. arm of a larger group of foreign companies operating out Peru and other South American countries.  Upon information, investigation, and belief,  BALESIA's U.S. operations, finances, and management are intertwined if not indistinguishable from its foreign "family" of related cell companies.

77.     Upon information, investigation, and belief, past and current officers, managers, and/or directors of BALESIA include, but are not limited to, NICHOLAS, MARIO JR., and/or GEORGE,

who conduct and engage in BALESIA business operations and consult for BALESIA in and around the counties of San Diego and Los Angeles counties of the state of California.

78.     Upon information, investigation, and belief, past and/or current shareholders of BALESIA include, but are not limited to, ALVAREZ TRUST and NICHOLAS (who is believed to be the current CEO). Upon information, investigation, and belief, NICHOLAS has the check writing authority for BALESIA.

79.     Upon information, investigation, and belief, MARIO JR. was a past manager of Balesia Peru. Upon information, investigation, and belief, MARIO JR. has held himself out as "CEO" and founder of one or more or all of the Balesia family of companies which would include BALESIA.

80.     Upon information, investigation and belief, BALESIA has paid mortgage expenses, solar installation expenses, and other construction expenses and costs related to the Going My Way Property, personally benefitting MARIO JR. who has utilized said real property as a residence.

81.     Upon information, investigation, and belief, MARIO JR. has provided and been paid for "consulting" services by BALESIA, regardless of whether his consulting services were for the benefit of BALESIA or its foreign "family" of companies or both.

82.     Post judgment discovery has lead to the production of numerous BALESIA checks from 2019, purported to be signed by NICHOLAS wherein the payee and the memo lines indicate the checks are made for the express benefit of MARIO JR. and/or for the benefit of MARIO JR. by and through, KONA BB, and the 16919 TRUST.

83.     Other 2019 BALESIA checks discovered by Plaintiff to date are made for the benefit of ALVAREZ TRUST, KONA BB, and NICOLAS, reflecting an intertwining of business dealings and

assets between the named Defendants which has blurred all legal and financial lines of separation of interest or control or ownership between the named Defendants.

84.     Upon information, investigation, and belief, these 2019 checks are merely the tip of the iceberg and MARIO JR. has such ownership, control, and interest in BALESIA that he has the power and authority to use its assets and property as needed to pay for his personal expenses and to fund his other alter egos and  business interests while disclaiming any ownership in BALESIA to avoid judgment collection.

85.     Upon information, investigation, and belief, the 2019 checks reflect a larger and ongoing pattern and practice whereby MARIO JR. conceals his ownership of assets such as stock in BALESIA and its "family" of companies, purports to receive no wages or compensation from BALESIA, yet utilizes BALESIA to pay for his personal and business expenses.  In this manner does MARIO JR. avoid lawful collection.

86.     Upon information, investigation, and belief, after being on notice of the Initial California Action and  Judgment Litigation, BALESIA has been utilized by MARIO JR. to conceal assets and income, to help MARIO JR. appear to be destitute and without collectable assets, and to pay debts and obligations incurred for the benefit (either directly or indirectly) of MARIO JR.   Upon information, investigation, and belief, the 2019 checks found to date are just a few examples of what appears to be a common and ongoing intentional fraudulent pattern and practice by MARIO JR. to unlawfully avoid judgment collection.

87.     Post judgment discovery continues in the Judgment Litigation and the various domesticated suits in Hawaii, Delaware, and Florida to further uncover more specifics beyond public records of how the BALESIA has operated as MARIO JR.'s shield from creditors including Plaintiff. Such

additional information will likely be discovered in the possession and control of NICHOLAS, GEORGE, MARIO JR., Kenneth Hobbs, and BALESIA.

**E.       THE FOUNDATION**

88.       Based on public record and upon investigation, information, and belief, MARIO JR. is a founder and the CEO of the FOUNDATION.

89.       Isidoro Gutierrez, the uncle of MARIO JR., is identified as the CFO of the FOUNDATION and Kenneth Hobbs is identified as the Treasurer of the FOUNDATION.

90.       The Articles of Incorporation for the FOUNDATION were signed by a Marigrace Delia. There exists at least one check dated 2/20/2019 that was located by Plaintiff from BALESIA paying Marigrace Delia.

91.       Post judgment discovery has lead to the production of numerous FOUNDATION checks from 2019, assumed to be signed by MARIO JR. wherein the payee and the memo lines indicate the checks are made for the express benefit of MARIO JR. and/or for the benefit of MARIO JR. by and through KONA BB and paying his American Express credit line.  Other 2019 FOUNDATION checks are made either to or for the benefit of the 16919 TRUST, the Kona Property, the ALVAREZ TRUST, and KONA BB, reflecting an intertwining of business dealings and assets between the named Defendants which has blurred all legal and financial lines of separation of interest or control or ownership between the named Defendants.

92.       There is a 11/29/2019 check made by the FOUNDATION to Brendon Alvarez in the amount of $750.00 with the memo "allowance" written on the check, further demonstrating that MARIO JR. utilizes the FOUNDATION as his own personal bank account for everything from golf club memberships to paying his children gifts.

93.     Upon information, investigation, and belief, these 2019 FOUNDATION checks are merely the tip of the iceberg and MARIO JR. has such ownership, control, and interest in FOUNDATION that he has the power and authority to use it as needed to pay for his personal expenses and to fund his other alter egos and business interests while disclaiming any ownership in the FOUNDATION, claiming falsely it is a non-profit or exists for charity purposes, to avoid judgment collection.

94.     Upon information, investigation, and belief, the 2019 checks reflect a larger and ongoing pattern and practice whereby MARIO JR. conceals his ownership of assets in shell companies and now a false charity yet utilizes the FOUNDATION to pay for his personal and business expenses. In this manner does MARIO JR. avoid lawful collection.

95.     Upon information, investigation, and belief, after being on notice of the Initial California Action and Judgment Litigation, the FOUNDATION was created, has been and is being utilized by MARIO JR. to conceal assets and income, to help MARIO JR. appear to be destitute and without collectable assets, and to pay debts and obligations incurred for the benefit (either directly or indirectly) of MARIO JR. Upon information, investigation, and belief, the 2019 checks found to date are just a few examples of what appears to be a common and ongoing intentional fraudulent pattern and practice by MARIO JR. to unlawfully avoid judgment collection.

96.     Post judgment discovery continues in the Judgment Litigation and the various domesticated suits in Hawaii, Delaware, and Florida to further uncover more specifics beyond public records of how the FOUNDATION has operated as MARIO JR.'s shield from creditors including Plaintiff and such information will likely be discovered in the possession and control of MARIO JR., KONA BB, the ALVAREZ TRUST, Isidoro Gutierrez, Kenneth Hobbs, and the FOUNDATION.

///

**F.    KONA BB**

97.    The entity known as KONA BB is believed to be operated by NICHOLAS, MARIO JR., MAGALI, DARCI, GEORGE, and/or the ALVAREZ TRUST. Actual ownership and management is as of yet unknown but all communication regarding KONA BB seems to center upon the residence of MAGALI where she resides with NICHOLAS in Orange County, California in property owned by the ALVAREZ TRUST.

98.    While the Kona Property is currently titled in the name of the ALVAREZ TRUST, it was once owned by MARIO JR. and upon information, investigation, and belief is operated as a high end vacation rental by KONA BB.

99.    Upon information, investigation, and belief, MARIO JR. utilizes the Kona Property as one of three places he resides with his wife and minor son.

100.    Upon information, investigation, and belief, MARIO JR. along with GEORGE, MAGALI, DARCI, and NICHOLAS use the Kona Property for family vacations and business retreats that may be connected to the business operations of Defendant Entities, and the business interest held by the ALVAREZ TRUST.

101.    2019 checks from the FOUNDATION demonstrate MARIO JR. utilizing FOUNDATION monies for the benefit of KONA BB and the Kona Property it manages.

102.    Upon information, investigation, and belief, MARIO JR. and DARCI have held themselves out as the managers of KONA BB to tourists and vacationers renting and staying on the Kona Property.

103.    Upon information, investigation, and belief, KONA BB generates substantial rental revenues from the Kona Property which go directly or indirectly through ALVAREZ TRUST and BALESIA,

to benefit MARIO JR., pay his debts and living and business expenses, and allow him to live a fairly affluent lifestyle while appearing destitute and without income or revenue. In this manner does MARIO JR. avoid lawful collection.

104. Upon information, investigation, and belief, MARIO JR. has such ownership, control, and interest in KONA BB that he has the power and authority to use it as needed to pay for his personal expenses and to fund his other alter egos and business interests while disclaiming any ownership in KONA BB to avoid judgment collection.

105. Upon information, investigation, and belief, MARIO JR.'s conduct with regard to KONA BB and the Kona Property reflects a larger and ongoing pattern and practice whereby MARIO JR. conceals his ownership of assets in shell companies yet utilizes the FOUNDATION to pay for his personal and business expenses.

106. Upon information, investigation and belief, after being on notice of the Initial California Action and Judgment Litigation, KONA BB has been and is still utilized by MARIO JR. to conceal assets and income, to help MARIO JR. appear to be destitute and without collectable assets, and to pay debts and obligations incurred for the benefit (either directly or indirectly) of MARIO JR. to unlawfully avoid judgment collection.

107. Post judgment discovery continues in the Judgment Litigation and the various domesticated suits in Hawaii, Delaware, and Florida to further uncover more specifics beyond public records of how KONA BB has operated as MARIO JR.'s shield from creditors including Plaintiff and such information will likely be discovered in the possession and control of MARIO JR., KONA BB, the ALVAREZ TRUST, the FOUNDATION, DARCI, BALESIA, NICHOLAS, and/or GEORGE.

///

1

## G.    16919 TRUST

2

3

108.    Upon information, investigation, and belief the 16919 TRUST owns the real property known

4

as the Going My Way Property.

5

109.    Upon information, investigation, and belief, the Going My Way Property was part of a

6

residential subdivision developed commercially by one or more California Cove related entities

7

which were owned and/or controlled by MARIO JR., GEORGE, and Luis Trujillo known as the

8

9

"Crosby Project."

10

110.    Based on public records, information, investigation, and belief, the Going My Way Property

11

was transferred several times, to individuals and/or their families that are and/or were related to,

12

affiliated with MARIO JR., to individuals and/or their families that are and/or were related to,

13

affiliated with MARIO JR., for unknown consideration (if any) and is now held by the 16919

14

15

TRUST.  Other assets of the 16919 TRUST are not currently known.

16

111.    Upon information, investigation, and belief, MARIO JR. and DARCI utilized the Going My

17

Way Property as a place of residence and for their own personal benefit for no known consideration.

18

19

112.    Based on post judgment discovery conducted in the Judgment litigation to date, while there

20

is a deed of trust/mortgage on the Going My Way Property, the 16919 TRUST has no bank account.

21

Instead expenses related to the Going My Way Property and the 16919 TRUST are paid by

22

23

BALESIA and the FOUNDATION.

24

113.    Upon information, investigation, and belief, MARIO JR. has such ownership, control, and

25

interest in the 16919 TRUST that he has the power and authority to use at least one of its assets– the

26

Going My Way Property– if not more of its assets for his own personal use.

27

28

114.   Upon information, investigation, and belief, while the Trustee of the 16919 TRUST claims that MARIO JR. is not a beneficiary of the trust, MARIO JR. has utilized its assets for his own benefit and has utilized FOUNDATION and BALESIA funds to pay for its expenses.

115.   NICHOLAS purportedly on behalf of BALESIA has also made payments from BALESIA funds for the benefit of the 16919 TRUST either directly or indirectly linked to MARIO JR.

116.   Upon information, investigation, and belief, MARIO JR.'s conduct with regard to the Going My Way Property and 16919 TRUST reflects a larger and ongoing pattern and practice whereby MARIO JR. conceals his ownership of assets in trusts yet utilizes the 16919 TRUST assets for his personal enjoyment and living.

117.   Upon information, investigation and belief, after being on notice of the Initial California Action and Judgment Litigation, 16919 TRUST has been and is still utilized by MARIO JR. to conceal assets and income, to help MARIO JR. appear to be destitute and without collectable assets, and to pay debts and obligations incurred for the benefit (either directly or indirectly) of MARIO JR. to unlawfully avoid judgment collection.

118.   Post judgment discovery continues in the Judgment Litigation and the various domesticated suits in Hawaii, Delaware, and Florida to further uncover more specifics beyond public records of how 16919 TRUST has operated as MARIO JR.'s shield from creditors including Plaintiff and such information will likely be discovered in the possession and control of MARIO JR., Trustee Kenneth Hobbs, NICHOLAS, GEORGE, the FOUNDATION, DARCI, and/or BALESIA.

**H.     MARIO JR.'S LIFESTYLE**

119.   Based on investigation and representations made to date in response to post judgment discovery, MARIO JR. is supposed to be without any source of income, having no job or occupation,

no real property in his name, paying no rent or mortgage, and yet his living expenses are paid for by entities which he purports to have no ownership over, no control over, and no employment with.

120.    MARIO JR. appears to be judgment proof, destitute and without income or assets to ever cover his obligations under the Judgment yet the FOUNDATION pays for his golf membership in Hawaii and BALESIA pays for the solar system installed on the property he resides at in San Diego, California. His American Express credit card bill is paid by the FOUNDATION and the ALVAREZ TRUST. His son's allowance is paid by the FOUNDATION. The real properties where MARIO JR. lives with his wife in Florida, California, and Hawaii are "family" properties, owned by the Alvarez family (MARIO JR., NICHOLAS, GEORGE, MAGALI, and/or DARCI) by and through various Defendant Entities to prevent lawful collection of personal judgments against MARIO JR. These examples are just a few such items discovered so far showing a fraudulent and intentional pattern and practice to transfer and conceal income and assets from lawful collection.

121.    DARCI as the wife of MARIO JR. may also be holding property, assets, and income of MARIO JR. to conceal them from lawful collection and/or may have assisted him in transfers to conceal such assets.

122.    But for the acts and omissions of the Defendants, each of them, Plaintiff would have been able to collect upon the Judgment upon MARIO JR.'s assets and income.

123.    Plaintiff has been damaged by Defendants' acts and omissions because they have enabled MARIO JR. To sustain a lifestyle of relative wealth and comfort and to avoid lawful execution on what, but for the fraudulent transfers and ongoing fraudulent concealment, would have been assets amenable to the legal processes by Plaintiff as the judgment creditor of MARIO JR.

124.    MARIO JR., with the knowing aid and intentional assistance of his family- MAGALI, GEORGE, DARCI and/or NICOLAS – has utilized one or more or all of the Defendant Entities to conceal assets from lawful judgment collection by Plaintiff.

125.    By engaging in this series of transfers with family members and the named Defendant entities, MARIO JR. as the Judgment Debtor materially changed his financial condition, and substantially transferred and/or concealed all of his assets and income into the ALVAREZ TRUST, BALESIA, the FOUNDATION, the 16919 TRUST, and/or KONA BB.  By concealing his assets in this fashion, MARIO JR. has with the purposeful aid and assistance of the Defendants frustrated, delayed, hindered, irreparably harmed, and unfairly prejudiced perhaps permanently Plaintiff's rights of collection under the terms of the Judgment.  Compensatory (both general and special), consequential, equitable, and punitive damages should be awarded to Plaintiff to make it whole as Plaintiff has and continues to suffer sustained financial injury as a direct and proximate result of the Defendants acts and omissions.

126.    Plaintiff has retained legal counsel to pursue collection and has and will continue to incur fees and costs as a result trying to collect upon the Judgment to date and in pursuing this lawsuit to seek further remedy and redress of the intentional and fraudulent harm cased by the Defendants acts and omissions.

### III.

### CLAIM FOR RELIEF

127.    Plaintiff hereby alleges the following claim for relief against Defendants jointly, severally and/or alternatively as applicable upon all information currently in their possession and upon belief.

///

**FIRST CLAIM FOR RELIEF**
**FRAUDULENT TRANSFER/FRAUDULENT CONCEALMENT AND DECLARATORY RELIEF/INJUNCTIVE RELIEF - ALL DEFENDANTS**

128.    The allegations of paragraphs 1 through 127 above are hereby re-alleged and incorporated herein by this reference.

129.    Defendant MARIO JR., on notice that he was subject to claims made against him as early as April 11, 2008 and on notice that he was subject to a Judgment has taken actions to transfer, conceal, and/or hide his assets and income to avoid lawful collection. Even before April 11, 2008, MARIO JR. was under threat of collection from other civil legal actions which promoted him to begin and to this day continue his practice of concealing assets and income in the names of others to avoid lawful collection.

130.    MARIO JR. has transferred and/or concealed the bulk (if not all) of his personal net worth, income, and assets without fair value or adequate consideration with insiders, specifically his family members and Defendant Entities. Said Defendant Entities are controlled by either MARIO JR. and/or his family members named as individual Defendants in this action. Upon information, investigation, and belief, said transfers and acts of concealment were done without receiving any reasonable equivalent value in exchange, were either lacking in consideration or had insufficient consideration related thereto, and were made to insides who allowed MARIO JR. to continue to exercise control, use, and benefit of the transferred and/or concealed assets.

131.    Even after transferring and/or concealing his assets in Defendant Entities, MARIO JR. has continued to utilize real property, income, and assets from the ALVAREZ TRUST, the 16919 TRUST KONA BB, BALESIA, and the FOUNDATION for his own personal benefit.

132.    The tangled history of checks paid between Defendant persons and entities, the multiple

encumbrances and transfers of real property, and the convoluted payment by Defendant Entities for real properties utilized personally by MARIO JR. are an intentional attempt to muddy the source of funds, put collectable and disclosed assets outside the reach of collection by creditors such as Plaintiff, and to otherwise conceal and leave the false impression to MARIO JR.'s creditors such as Plaintiff that MARIO JR. has little to no assets to collect against. These acts were intentionally, fraudulently, and maliciously done to hinder, delay and/or defraud Plaintiff and upon investigation and belief occurred without reasonable consideration of value being exchanged.

133.    From what public information is currently available due to COVID-19 court closures and restrictions about other older California state court actions pursuing MARIO JR. for debts and obligations due and owing, MARIO JR. has been engaged in an ongoing patter and scheme with the one or more of the other Defendants to unlawful transfer and conceal assets from other creditors as well. Upon investigation, information, and belief, these other older California state lawsuits (dating to the early 2000s) show that Plaintiff is not the first to allege that MARIO JR. has transferred and concealed assets fraudulently to frustrate and hinder lawful collection. Plaintiff is just the latest in a long line of creditors who have fallen victim to Defendants' ongoing pattern of fraudulent concealment.

134.    Said acts discovered to date and those acts that are anticipated to be discovered as further business dealings involving the Defendants are uncovered are violations of common law fraudulent transfer/concealment, the Uniform Fraudulent Conveyance Act, and/or  the Uniform Voidable Transactions Act.  Other transfers and acts of concealment may have also occurred with regard to MARIO JR.'s assets that discovery and further investigation may yet uncover.

135.    Plaintiff sustained damage as a result of these transfers and/or the concealment between insiders and each Defendant should be found liable for their fraudulent acts and omissions.

136.    Damages should be awarded to Plaintiff as and against each Defendant since they aided in and participated in concealing and transferring assets to avoid said Judgment debt.

137.    Further equitable relief should be granted including, but not limited to, voiding, unwinding, and/or reversing any property (real or personal) transfers and  to have such property titled in the name of MARIO JR. as evidence may support pursuant to common law fraudulent transfer/concealment, the Uniform Voidable Transactions Act (effective January 1, 2016), and/or the Uniform Fraudulent Transfer Act (California Civil Code Sections 3439 *et seq*.) for those transfers made to or obligations incurred prior to January 1, 2016.

138.    Preliminary and permanent injunctive and declaratory relief should be granted preventing further transfer of assets both real and personal by all of the Defendants and  preventing further encumbrances being placed on any and all property owned by any Defendants during the pendency of this litigation.

139.    To the extent warranted by law and code, attorney fees, costs, and punitive damages should be awarded against Defendants, each of them, for their fraudulent conduct, conscious disregard for the rights of Plaintiff and the law, and malicious conduct.

140.    Plaintiff also requests a pre-judgment and post-judgment writ of attachment along with injunctive relief to ensure there are no further insider transfers of personal or real property of the Defendants and to ensure any property interest (real or personal) is not encumbered or pledged while this lawsuit is ongoing.

///

**SECOND CLAIM FOR RELIEF**
**CONSPIRACY TO COMMIT FRAUDULENT TRANSFER/FRAUDULENT**
**CONCEALMENT - ALL DEFENDANTS**

141.    The allegations of paragraphs 1 through 140 above are hereby re-alleged and incorporated herein by this reference.

142.    Defendants, each of them, acted in concert with each other and agreed to a common plan to assist MARIO JR. in concealing his assets, income, and property in such a fashion as to present to his creditors the appearance that he is destitute and judgment proof while allowing MARIO JR. to maintain use and control over all such assets, income, and property for his own personal and business use at will.

143.    Defendants, each of them knowingly agreed to participate in this plan, knowing that it would conceal assets from lawful creditors, including but not limited to, Plaintiff, and violate the law in so doing. Defendants aided and worked together allowing MARIO JR. to disclaim ownership to the world while behind the scenes allowing him full access and use to income, assets and property on demand for his own personal and business purposes.

144.    As a direct and proximate result of Defendants agreement to assist MARIO JR. in violating common law fraudulent transfer/concealment, the Uniform Fraudulent Conveyance Act and/or the Uniform Voidable Transactions Act, and taking steps and actions to actively assist in this plan, Plaintiff has been damaged in that it has been unable to lawful collect its Judgment, has been frustrate, hindered, and delayed in locating and finding assets to collect, and otherwise been deprived of assets that would have made it whole under the Judgment but for Defendants actions.

145.    But for the acts of Defendants, each of them, some or all of the Judgment could have been

satisfied and the delay has potentially prejudiced Plaintiff's ability to collect, perhaps forever, the Judgment amount still due and owing.

146.    Plaintiff has also incurred substantial attorney fees in the Judgment Litigation, the Florida Judgment Litigation, the Delaware Judgment Litigation, and the Hawaii Judgment Litigation attempted to collect on the Judgment only to be frustrated, hindered, delayed, and barred from lawful collection as a direct and proximate result of this conspiracy. Defendants, each of them, are liable for all such fees and costs and incidental charges incurred by Plaintiff as a result. Defendants, each of them, are liable to the extent permitted by law for the amount of the Judgment they helped MARIO JR. avoid.

147.    Punitive damages should be awarded against Defendants, each of them, for their fraudulent conduct, conscious disregard for the rights of Plaintiff and the law, and malicious conduct.

## THIRD CLAIM FOR RELIEF
### CONSTRUCTIVE TRUST - DEFENDANTS BALESIA, 16919 TRUST, ALVAREZ TRUST, FOUNDATION, and KONA BB

148.    The allegations of paragraphs 1 through 147 above are hereby re-alleged and incorporated herein by this reference.

149.    Pursuant to California Civil Code § 2224, a constructive trust should be imposed upon the property and assets and income of BALESIA, the ALVAREZ TRUST, the 16919 TRUST, the FOUNDATION, and KONA BB. The assets, property, and income held by these Defendant entities has been gained, in part, due to fraudulent and wrongful acts of concealment and transfer by MARIO JR. to avoid, frustrate, hinder, defraud, and delay collection by lawful creditors.

150.    Said property, assets, and income is more properly the property of MARIO JR. and should be held in constructive trust so as to be accessible for lawful attachment, lien, garnishment, seizure

and sale, collection as permitted by law by Plaintiff as a Judgment Creditor under the terms of the Judgment. It is only by and through the imposition of a constructive trust that equities can be kept, injustice avoided, and further, ongoing, and continued fraudulent and unlawful transfers and/or concealments can be prevented and Plaintiff who has been irreparably harmed and unfairly prejudiced be made whole.

**FOURTH CLAIM FOR RELIEF**
**DECLARATORY RELIEF/ALTER EGO - ALL DEFENDANTS**

151.    The allegations of paragraphs 1 through 150 above are hereby re-alleged and incorporated herein by this reference.

152.    The ALVAREZ TRUST has acted in such bad faith and with such unity of interest, influence, and control with MARIO JR. by and through his acts and the acts and omissions of MAGALI, MARIO JR., and GEORGE as to (a) forfeit its right to be considered an irrevocable trust under its own terms; and, (b) be considered nothing more than an alter ego of MAGALI, GEORGE, and/or MARIO, JR. The Court should declare not only that the ALVAREZ TRUST is an alter ego but also recognize and declare that it is revocable and/or not a separate legal entity of any kind from MARIO JR, GEORGE, and/or MAGALI.

153.    The FOUNDATION has acted in such bad faith and with such unity of interest, influence, and control with MARIO JR., by and through his acts and omissions as to (a) be considered a for profit corporation and not a charity or non-profit of any kind; and (b) be considered nothing more than the alter ego of MARIO JR.

154.    BALESIA has acted in such bad faith and with such unity of interest, influence, and control with MARIO JR., by and through his acts and omissions and the acts and omissions of NICOLAS

and GEORGE as to be considered nothing more than the alter ego of all other entities that make up the Balesia "family" of companies, and the alter ego of MARIO JR., GEORGE, ALVAREZ TRUST, and NICHOLAS.

155.    KONA BB has acted in such bad fait and with such unity of interest, influence, and control with MARIO JR., by and through his acts and omissions and the acts and omissions of MARIO JR., the ALVAREZ TRUST, DARCI, MAGALI, and NICHOLAS as to be considered nothing more than the alter ego of DARCI, MAGALI, NICHOLAS, GEORGE, the ALVAREZ TRUST, and/or MARIO JR.

156.    16919 TRUST  has acted in such bad fait and with such unity of interest, influence, and control with MARIO JR., by and through his acts and omissions and the acts and omissions of MARIO JR., GEORGE, the ALVAREZ TRUST, BALESIA, and the FOUNDATION as to be considered nothing more than the alter ego of MARIO JR.. The Court should declare not only that the 16919 TRUST is an alter ego but also recognize and declare that it is revocable and/or not a separate legal entity of any kind from MARIO JR.

157.    This Honorable Court should declare that there is no corporate fiction to honor and there individuality or separateness of BALESIA, KONA BB, the ALVAREZ TRUST, and the FOUNDATION has ceased to exist or has never existed in the first place such that they are considered one and the same with those individuals that they are alter egos of as named herein and liability of one is liability for all their alter egos and each of them are jointly and severally liable in MARIO JR.'s place and stead under the terms of the Judgment.

///

///

**IV.**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, expressly reserving its right to amend this Complaint at the time of, or prior to trial as may be permitted by law or code, prays for judgment against Defendants, jointly and/or severally as applicable, as follows:

1.    For general and special damages as set forth herein, including but not limited to, the attorney fees and costs incurred pursuing the Judgment to date and to the extent permitted by law, the ability to recover the Judgment amount from all Defendants jointly and severally, and all other tort damages suffered as a direct and proximate result of Defendants acts and omissions;

2.    Declaratory relief and injunctive relief as requested herein including, but not limited to, (a) voiding and/or unwinding fraudulent transfers and acts of fraudulent concealment as permitted by law; (b) preventing and precluding further and/or continuing transfers or encumbrances of assets and property of the Defendants, both preliminary and permanently; (c) for such pre and post judgment writs of attachments as are necessary against personal and/or real property; (d) to declare rights and ownership related to the assets that were transferred to avoid collection back into the name of MARIO JR.; (e) to declare certain Defendants the alter egos of each other, specifically MARIO JR., so that the Judgment against MARIO JR. can be collected directly against said alter egos;  (f) to declare and find the ALVAREZ TRUST and the 16919 TRUST to be revocable, self-settled and/or indistinguishable and/or one and the same from the interests of MARIO JR.; and (g)  all other remedies under common law fraudulent transfer/concealment, the Uniform Fraudulent Transfer Act and/or the Uniform Voidable Transactions Act as applicable;

3.     For the imposition of a constructive trust on the property and assets of the Defendant Entities and other assets of MARIO JR.'s family named herein as Defendants in their individual capacities to undo the damage caused by Defendants unlawful acts and to prevent and preclude further and/or ongoing fraudulent concealment and transfers;

4.     For punitive damages against Defendants, each of them, arising from their intentional, malicious, fraudulent conduct;

5.     For pre and post judgment interest as permitted by law;

6.     For any further and additional legal and/or equitable relief that this Honorable Court may deem appropriate either directly or in the alternative.

Dated this 31st day of December, 2020.

ASSLY SAYYAR, ATTORNEY AT LAW

ASSLY SAYYAR, ESQ. (SBN 255145)
2348 Foothill Drive
Vista, California 92084
Tel: 760-542-8717
Attorneys for Plaintiff