UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CADLES OF WEST VIRGINIA, LLC,<br><br>                                    Plaintiff,<br><br>v.<br><br>MARIO ALVAREZ, et al.,<br><br>                                    Defendants. | Case No.:  20-CV-2534 TWR (WVG)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; (3) DENYING PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF ATTACHMENT; AND (4) DISMISSING *SUA SPONTE* DOE AND ROE DEFENDANTS**<br><br>(ECF Nos. 86, 92, 97) |

Presently before the Court are the Parties' Cross-Motions for Summary Judgment, or in the Alternative, Partial Summary Judgment (ECF No. 92, "Pl.'s MSJ" & ECF No. 97, "Defs.' MSJ") and Plaintiff's Motion for Prejudgment Writ of Attachment (ECF No. 86, "Att. Mot."). All Motions are opposed and have been fully briefed according to the schedule set forth by the Court. (*See* ECF Nos. 92, 94, 95, 97, 103–108.) On May 4, 2023, the Court held a hearing and took the Motions under submission. (*See* ECF No. 109; *see also* ECF No. 115, "Mot. Tr.") Having carefully considered the Parties'

arguments, the record, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment.   As for the remaining claims, the Court **DENIES** Plaintiff's Motion for Prejudgment Writ of Attachment.

## BACKGROUND[1]

This action arises from a dispute regarding the collection of an underlying Judgment entered by the Honorable John A. Houston against Defendant Mario Alvarez ("Mario") on November 21, 2011.   *See* Judgment Against Mario Alvarez and California Cove at San Elijo, LLC, *AmT CADC Venture, LLC v. Alvarez, et al.*, No. 3:09-CV-02787-JAH-MDD (S.D. Cal. filed Nov. 11, 2011) ("Judgment Litigation"), ECF No. 124.[2]   Judge Houston entered judgment in the amount of $24,620,188.41 due by November 18, 2011, with interest accruing at a daily rate of $5,192.30 thereafter.   *See id.* Mario stipulated to this Judgment, (*see* ECF No. 107, "Jt. Stmt." at 4),[3] and the case was subsequently closed, *see* Judgment and Dismissal, Judgment Litigation (S.D. Cal. filed Sept. 25, 2012), ECF No. 129.

The case was later reopened on January 18, 2017, when Plaintiff Cadles of West Virginia, LLC filed a Notice of Assignment of Judgment informing the Court that ownership of and interest in the Judgment had been assigned and transferred to Cadles of West Virginia, LLC.   *See* Notice of Acknowledgment of Assignment of Judgment, Judgment Litigation (S.D. Cal. filed Jan. 18, 2017), ECF No. 130.   The Clerk of Court renewed Plaintiff's Judgment on August 26, 2021.   *See* Renewal of Judgment, Judgment

---

[1]   The Parties submitted an extremely short Joint Statement of Undisputed Facts.   (*See generally* ECF No. 107, "Jt. Stmt." (agreeing to only eight facts, six of which are about the Alvarez family's relation to one another).)   Because the Court must view the facts in a different light when evaluating each Party's Motion for Summary Judgment, the Background Section of this Order sets forth only those facts that, based on the Court's review of the record, appear to be undisputed.

[2]   Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record, including filings in other court cases.

[3]   To avoid ambiguity, citations to the Parties' filings generally refer to the CM/ECF pagination electronically stamped at the top of each page.

Litigation (S.D. Cal. filed Aug. 26, 2021), ECF No. 141.  Plaintiff and its predecessor in interest have domesticated this Judgment in Delaware, Florida, and Hawaii.  *See generally*, *Cadles of W. Va., LLC v. Alvarez, et al.*, No. 1:19-MC-00360-CFC (D. Del. 2019); *Amt. CADC Venture, LLC v. Alvarez, et al.*, No. 1:17-MC-20988-FAM (S.D. Fla. 2017); *AmT CADC Venture, LLC v. Alvarez, et al.*, No. 1:17-MC-00070-DKW-RLP (D. Haw. 2017).  Although Plaintiff has attempted to collect the Judgment, it remains unsatisfied, (*see* ECF No. 1, "Compl." at 9), as, according to Defense counsel, Mario is "judgment proof" (*see* Mot. Tr. at 33:9–12).

Plaintiff initiated the instant action against Defendants on December 31, 2020, bringing various claims against Mario and the following co-Defendants: George Alvarez, Magali Alvarez, Darci Alvarez, and Nicholas Alvarez (collectively, "Mario's Family"); Balesia Towers, Inc. ("Balesia"), the 16919 Going My Way Trust (the "16919 Trust"), the Alvarez & Alvarez Irrevocable Trust Dated January 31, 2001 (the "Alvarez Trust"), Kona Beach Bungalows, LLC ("Kona"), and the Mario R. Alvarez Sr. Cancer Foundation (the "Cancer Foundation") (collectively, the "Defendant Entities"); and Does I through X and Roe Corporations XI through XX (collectively, the "Doe and Roe Defendants"). (*See generally* Compl.)   As for Mario's Family, all Parties agree that Defendants' relations are as follows: George is Mario's brother, Magali is his mother, Darci is his wife, and Nicholas is his son.  (*See generally* Jt. Stmt.)   Plaintiff brings four claims against Defendants: (1) fraudulent transfer and/or fraudulent concealment (against all Defendants); (2) conspiracy to commit fraudulent transfer and/or concealment (against all Defendants); (3) constructive trust (against Defendant Entities); and (4) declaratory relief/alter ego (against all Defendants).  (*See generally* Compl.)

After several challenges to Plaintiff's service of the Summons and Complaint, Defendants answered, and the Parties proceeded to discovery in early 2022.  (*See generally* Docket.)  After completing discovery in February 2023, (*see* ECF No. 62), the Parties filed the instant Motions, (*see generally* Docket).  Specifically, on February 8, 2023, Plaintiff filed its Motion for Prejudgment Writ of Attachment, (*see* Att. Mot.),

which Defendants opposed, (*see* ECF No. 103, "Att. Opp."), and Plaintiff supported with a Reply, (*see* ECF No. 108).   Additionally, on March 2, 2023, Plaintiff filed a Motion for Summary Judgment, (*see* Pl.'s MSJ), and on March 23, 2023, Defendants filed a consolidated Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion, (*see* Defs.' MSJ).   Plaintiff opposed Defendants' Motion, (*see* ECF No. 105), and both Parties filed Replies in support of their respective Motions, (*see* ECF Nos. 104, 106).   On April 20, 2023, the Parties filed their Joint Statement of Facts.   (*See* Jt. Stmt.)   After receiving and reviewing the Parties' filings, the Court held a hearing on Plaintiff's Motion for Prejudgment Writ of Attachment and the Parties' respective Cross-Motions for Summary Judgment on May 4, 2023.   (*See* ECF No. 109; Mot. Tr.)   At the hearing, the Court permitted Plaintiff to supplement the record with two additional Exhibits, (Mot. Tr. at 39:2–9), which Plaintiff did on May 5, 2023, (*see* ECF No. 110).

## LEGAL STANDARD

### I.   Cross-Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).   A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*   When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Where, as here, the parties have filed cross-motions, the court considers each motion "separately, giving the nonmoving party in each instance the benefit of all

reasonable inferences." *See SEC v. Feng*, 935 F.3d 721, 728 (9th Cir. 2019). The Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015). As for each motion, the initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). Moreover, "[w]hen the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute or show how the materials cited by the opposing party fail to establish the absence of a genuine dispute. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(c). This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(c). A nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

/ / /

## II.  Motion for Prejudgment Writ of Attachment

"A writ of attachment allows a plaintiff, in certain prescribed instances, to obtain a pre-trial seizure of the property of a defendant-debtor."  *Whitehouse v. Six Corp.*, 40 Cal. App. 4th 527, 532 (1995) (citing *Randone v. App. Dep't*, 5 Cal. 3d 536, 543 (1971)).  The purpose of prejudgment attachment is to "aid in the collection of a money demand by seizure of property in advance of trial and judgment, as security for eventual satisfaction of the judgment."  *Nat'l Gen. Corp. v. Dutch Inns of Am., Inc.*, 15 Cal. App. 3d 490, 495 (1971) (citations omitted); *see also Halstead v. Halstead*, 72 Cal. App. 2d 832, 836 (1946) ("The usual and main purpose of an attachment is to secure and ensure the payment of any judgment that may be recovered in the successful prosecution of an action.").  In sum, it is "a provisional remedy to aid in the collection of a money demand."  *Kemp Bros. Constr. Inc. v. Titan Elec. Corp.*, 146 Cal. App. 4th 1474, 1476 (2007).

When a writ of attachment is sought, the federal district court applies the law of the state in which it sits.  *See* Fed. R. Civ. P. 64(a).  Under California law, a plaintiff may obtain a prejudgment writ of attachment if it establishes: (1) its claim is one for which attachment may be issued; (2) the claim has "probable validity;" (3) attachment is sought for the sole purpose of recovering on that claim; and (4) the amount to be secured by the attachment is greater than zero.  *See* Cal. Civ. Proc. Code § 484.090; *see also* Cal. Civ. Proc. Code § 484.020 (requiring the same along with a description of the property to be attached and a statement that the claim has not been discharged in bankruptcy).

As for the first element, typically, attachment may only be issued for claims that are based on a contract and seek monetary relief of a fixed or readily ascertainable amount in excess of $500.  *See* Cal. Civ. Proc. Code § 483.010(a); *see also* § 483.010(c) (also requiring the claim to arise out of a "trade, business, or profession" if the defendant is a natural person).  There are, however, several statutory alternatives to the contract requirement.  *See, e.g.*, Cal. Civ. Proc. Code § 483.010(a) (providing that attachment must be based on a contract claim "[e]xcept as otherwise provided by statute"); *Royals v.*

*Lu*, 81 Cal. App. 5th 328, 346 n.11 (2022) (collecting statutory exceptions to the contract requirement). Amongst these statutory exceptions is California's Uniform Voidable Transactions Act ("UVTA"), which provides that in an action for relief against a fraudulent transfer, a creditor may obtain "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee." Cal. Civ. Code § 3439.07(a)(2); *see also Whitehouse*, 40 Cal. App. 4th at 533 ("A plaintiff who suspects that the defendant-debtor has fraudulently transferred assets in order to become judgment proof may [] enforce its claim against the transferred property by way of a writ of attachment.").

As for the second element, a claim has "probable validity" if it is "more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." Cal. Civ. Proc. Code § 481.190. In other words, "the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Loeb & Loeb v. Beverly Glen Music, Inc*., 166 Cal. App. 3d 1110, 1120 (1985); *see also Hobbs v. Weiss*, 73 Cal. App. 4th 76, 80 (1999); *Blastrac, N.A. v. Concrete Solutions & Supply*, 678 F. Supp. 2d 1001, 1005 (C.D. Cal. 2010).

The final two elements require a plaintiff to clearly establish the monetary amount to be secured by attachment, which must be limited to the potential recovery on the claim providing the basis for attachment, rather than all claims in the action. *See* Cal. Civ. Proc. Code § 484.090(a)(3)–(4). This amount should be established by affidavit and uncontradicted by other evidence in the record. *See Kuzmicki v. Nelson*, 101 Cal. App. 2d 278, 281 (1950); *Tyson v. Reinecke,* 25 Cal. App. 696, 701 (Cal. Ct. App. 1914). If attachment is premised upon a claim of fraudulent transfer under the UVTA, the amount to be attached must be limited to "the value of the asset transferred" or "the amount necessary to satisfy the creditor's claim, whichever is less." *See* Cal. Civ. Code § 3439.08.

The party seeking attachment bears the burden of establishing each of the four elements "by a preponderance of the evidence." *Blastrac*, 678 F. Supp. 2d at 1004–05

(citing *Loeb & Loeb*, 166 Cal. App. 3d at 1116); *see also Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1056, 1062 (C.D. Cal. 2009).   The moving party must support their motion with an affidavit or declaration that "contain[s] evidentiary facts, stated 'with particularity,' and based on actual personal knowledge with all documentary evidence properly identified and authenticated." *Hobbs*, 73 Cal. App. 4th at 80 (citing Cal. Civ. Proc. Code § 482.040); *see also* Cal. Civ. Proc. Code § 484.030 (requiring an affidavit).   Because a prejudgment writ of attachment is a creature of statutory creation, its requirements are subject to strict construction. *See Hobbs*, 73 Cal. App. 4th at 79 (citing *Vershbow v. Reiner*, 231 Cal. App. 3d 879, 882 (1991)); *see also Blastrac*, 678 F. Supp. 2d at 1001.

A court may consider both a motion for summary judgment and a motion for a prejudgment writ of attachment; however, if the court grants summary judgment on a particular claim, any pending motion for a prejudgment writ of attachment based on that claim is rendered moot.   *See, e.g.*, *Egrovich v. CCFG Costebelle La Jolla, LLC*, No. 21-CV-774 TWR (MDD), 2022 WL 485006, at *6 (S.D. Cal. Feb. 16, 2022); *JP Morgan Chase Bank, N.A. v. Lewis*, No. 12-CV-2971-H-RBB, 2014 WL 12531091, at *7 (S.D. Cal. June 30, 2014).   Conversely, if summary judgment is denied, a motion for prejudgment writ of attachment may still be granted.   *See, e.g.*, *Great Am. Ins. Co. v. Nat'l Health Servs., Inc*., 62 Cal. App. 3d 785, 794 n.9 (1976).   The court's adjudication of an application for prejudgment writ of attachment has no effect on the determination of any ultimate issues in the action and may not be offered as evidence or referenced at trial. *See* Cal. Civ. Proc. Code § 484.100.

## ANALYSIS

## I.   Cross-Motions for Summary Judgment

Both Parties have moved for summary adjudication of all claims in the Complaint: fraudulent transfer/concealment, conspiracy to commit fraudulent transfer/concealment, constructive trust, and alter ego. (*See generally* Pl.'s MSJ & Defs.' MSJ.)   Additionally, / / /

Plaintiff objects that certain evidence relied on by Defendants cannot be presented in an admissible form at trial.  (*See generally* ECF No. 105 at 13.)

### A.      Evidentiary Objections

Plaintiff raises several objections to the evidence submitted by Defendants in support of their Cross-Motion for Summary Judgment, specifically Defense Exhibits 8, 9, 10, 11, 12, 13, and 18.  (*See* ECF No. 105 at 13.)[4]  In ruling on a motion or cross-motion for summary judgment, "[a] trial court can only consider admissible evidence."  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e)); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)); *see also* Fed. R. Civ. P. 56(c)(2).  Accordingly, before turning to the merits of the Parties' Cross-Motions, the Court must determine whether Defendants' Exhibits are admissible. Notably, Defendants do not address any of Plaintiff's objections in their responsive pleading.  (*See generally* ECF No. 106.)

First, Plaintiff objects that Exhibits 8 through 12 are unauthenticated and lack foundation in violation of Federal Rules of Evidence 901 and 602.  (*See* ECF No. 105 at 13.)  Exhibits 8 through 12 are purported "[e]xcerpts from ProTitle USA Report[s]" for various properties at issue in this action.  (*See* Defs.' MSJ at 22; *see also* ECF Nos. 97-8– 97-12.)  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Typically, the authentication requirement is satisfied by laying foundation that a witness has personal knowledge of the evidence.  *See* Fed. R. Evid. 602, 901(b)(1).

"In a summary judgment motion, documents authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Fed.R.Civ.P.]

---

[4]     In compliance with Section III.B.4 of the undersigned's Standing Order for Civil Cases, Plaintiff properly raised these objections in its Opposition to Defendants' Cross-Motion.  *See* Standing Order for Civil Cases § III.B.4 (explaining that "[o]bjections to evidence submitted in support of a motion must be contained within the opposition brief" and "[n]o separate statements of objections will be allowed").

56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'" *See id.* at 773–74 (alteration in original) (footnotes omitted) (*citing Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).  Here, Exhibits 8 through 12 are not attached to any affidavit.  (*See generally* ECF Nos. 97-8–97-12.)  Moreover, the Exhibits do not appear to be self-authenticating under Federal Rule of Evidence 902.  Because unauthenticated documents may not be considered when ruling on a motion for summary judgment, the Court finds Exhibits 8 through 12 inadmissible under Federal Rules of Evidence 901 and 602.  *See Orr*, 285 F.3d at 773 (collecting 9th Circuit cases finding the same).

Next, Plaintiff objects to Exhibit 13 as inadmissible hearsay pursuant to Federal Rules of Evidence 801, 802, and 803.  (*See* ECF No. 105 at 13.)  Hearsay evidence is generally inadmissible and therefore may not be considered on a motion for summary judgment.  *See Orr*, 285 F.3d at 773.  If, however, the proponent can present the evidence at issue in a non-hearsay form at trial, the court may consider it on a motion for summary judgment.  *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003); *see also JL Beverage Co., LLC v. Jim Bean Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

Here, Exhibit 13 is purportedly three letters which were sent from the Hirshberg Foundation for Pancreatic Research to Mario.  (*See* Defs.' MSJ at 22.)  Thus, the Exhibit is an out-of-court statement that—absent any argument to the contrary otherwise—is offered for the truth of the matter asserted therein.  Accordingly, it is hearsay.  *See* Fed. R. Evid. 801.  Defendants have failed to identify any hearsay exceptions or exemptions for the Exhibit, nor have they explained how it could be presented in an admissible, non-hearsay form at trial.  Therefore, the Court finds Exhibit 13 inadmissible under Federal Rule of Evidence 801.

Finally, Plaintiff objects to Exhibit 18 on the basis that it was not disclosed by Defendants during discovery in violation of Federal Rule of Civil Procedure 37(c).  (*See* ECF No. 105 at 13.)  If a party fails to follow the disclosure requirements of Rule 37(c), "the party is not allowed to use that [undisclosed] information . . . to supply evidence on a

motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." *See* Fed. R. Civ. P. 37(c)(1).  At the hearing, Defendants admitted that they failed to produce Exhibit 18 in discovery but argued that the Court may take judicial notice of the Exhibit as a public record.  (*See generally* Mot. Tr. at 49:23–50:8.)  Defendants did not assert that their failure was substantially justified or harmless.

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of any fact which is not subject to reasonable dispute, either because it is "generally known" within the jurisdiction or "can accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(a).  According to Defendants, Exhibit 18 is the "Delaware Secretary Of State entity details for Kona Beach Bungalow, LLC."  (*See* Defs.' MSJ at 23.)  The Exhibit, however, appears to be a printout of a webpage, and it contains no independent indicia of authenticity as a public record that would allow the Court to conclude that it is unquestionably accurate.  (*See generally* ECF No. 97-18.)  Accordingly, the Court declines to take judicial notice of the facts contained in the Exhibit.

In light of the foregoing, the Court **SUSTAINS** Plaintiff's objections to Defendants' Exhibits 8, 9, 10, 11, 12, 13, and 18.  Accordingly, the Court will not consider these Exhibits when ruling on the Parties' Cross-Motions for Summary Judgment.

### B.    *Fraudulent Transfer and/or Concealment*

Plaintiff has brought a claim of fraudulent transfer and/or fraudulent concealment against all Defendants pursuant to both California common law and the UVTA.  (*See* Compl. ¶ 134; *see also* Pl.'s MSJ at 12–13.)  Although both Parties move for summary adjudication of the fraudulent transfer claim, the legal elements are undisputed.  (*See* Pl.'s MSJ at 12–13; Defs.' MSJ at 15–16.)  Under the UVTA, a "transfer made or obligation incurred by a debtor" is fraudulent and thereby "voidable as to a creditor" if the debtor

/ / /

/ / /

acted: "(1) With actual intent[5] to hinder, delay, or defraud any creditor of the debtor. [or] (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction. [or] (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."  Cal. Civ. Code § 3439.04(a); *see also* Cal. Civ. Code § 3439.05.  "The purpose of the UVTA is to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt."  *Chen v. Berenjian*, 33 Cal. App. 5th 811, 817 (2019).

Similarly, under California common law, a transfer is fraudulent if (1) the defendant had a duty to disclose a material fact to the plaintiff (2) but intentionally concealed or suppressed that fact with the intent to defraud and (3) as a result, the plaintiff was unaware of that fact, acted differently, and sustained damage.  *See Hambrick*

/ / /

---

[5]    "In determining actual intent under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any or all of the following:
(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor."
Cal. Civ. Code § 3439.04(b).

*v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (quoting *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014)).

### 1.  *Plaintiff's Motion*

Plaintiff asserts that it "has met its initial burden of establishing the absence of any genuine issue of material fact" as to whether "[u]nder common law or under statutory law, Mario has fraudulently transferred assets to each of the Defendants that were once his or held in his name." (Pl.'s MSJ at 13–14.)  To prevail on its fraudulent transfer claim, Plaintiff must first identify those instances in which Mario, the debtor, transferred assets out of his possession.  *See* Cal. Civ. Code § 3439.04(a); *see also* Cal. Civ. Code § 3439.06 (explaining that the debtor must transfer an asset which he "has acquired rights in").  Under the UVTA, a "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(m).[6]

As an initial matter, Plaintiff's Motion and Reply in support ask the Court to adopt a broad definition of asset transfer.  Specifically, Plaintiff asserts that Mario "transfers" an "asset" out of his possession every time he provides work or services for Defendants without receiving payment and Defendants pay his bills or allow Mario to stay at their properties.  (*See* ECF No. 104 at 7; *see generally* Pl.'s MSJ; Mot. Tr. at 4:17–5:25.)  But as Defendants correctly point out, (*see* Defs.' MSJ at 15), a transfer only occurs under the UVTA when the debtor "has acquired rights in the asset transferred," *see* Cal. Civ. Code § 3439.06(d), and then disposes of or parts with their interest in that asset, *see* Cal. Civ. Code § 3439.01(a)&(m).

Although a debtor can acquire rights in their future earnings or their spouse's future earnings, thereby preventing either from transferring their earnings to avoid

---

[6]   The UVTA does not include a definition of "obligation."  *See generally* Cal. Civ. Code § 3439.01.

collection, *see State Bd. of Equalization v. Woo*, 82 Cal. App. 4th 481, 483–84 (2000), no court has gone so far as to conclude that a debtor acquires rights to a hypothetical payment any time they perform services for the benefit of another.  A hypothetical payment, to which no right has been established, does not constitute an "asset" because it has not yet become the "property of [the] debtor" nor "the subject of [the debtor's] ownership."  *See* Cal. Civ. Code § 3439.01(a), (j).  To find otherwise would dramatically expand the definition of "asset," allowing creditors to bring fraudulent transfer claims any time a debtor provides services to third-parties and is not paid.  Accordingly, the Court concludes that Mario's provision of services to Defendants without payment and Defendants' provision of financial assistance to Mario does not constitute a "transfer" of Mario's "assets" out of the debtor's possession as defined by the UVTA.

Accordingly, Plaintiff must identify those transfers from Mario to third-parties that it believes are fraudulent.  Plaintiff fails to do so.  Instead, Plaintiff simply states that "Mario has fraudulently transferred assets."  (*See* Pl.'s MSJ at 13.)  Plaintiff supports this broad legal conclusion with numerous record citations, (*see id.* (citing "ECF#86-9 at 12:23-14:3, #86-10 at 42:18-43:17, #86-11, #86-5I, ECF#85 at Ex. 3,[7] #85 at Ex. 17 at pgs. 1634, 1636, #85 at Ex. 18 at pg. 1641")), but fails to identify the contents of these citations or explain how they "demonstrate the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323.  The Court examined these citations in search of evidence of fraudulent transfers but found scant support.

By way of brief background, in support of its assertion that Mario has fraudulently transferred assets, Plaintiff cites to various documents and excerpts of deposition testimony.  As for depositions, Plaintiff cites an August 31, 2022, deposition of Mario as the person most familiar with Kona in which Mario states that he once owned 33% of Kona—which he bought for $100—but ceased to own that interest at some unknown

---

[7]    Because there are no Exhibits attached to ECF No. 85, the Court assumes Plaintiff intended to refer to ECF No. 95, which contains the unsealed Exhibits submitted in support of Plaintiff's Motion for Prejudgment Writ of Attachment.  (*See generally* ECF No. 95.)

point.  (*See* ECF No. 86-9 at 12:23–14:3.)[8]  Plaintiff also cites the October 4, 2022, deposition of Mario as the person most familiar with the Alvarez Trust in which he states that he "could have" made representations to banks and financial institutions that he owned various properties belonging to his parents in an effort to help his parents either "get loans or get money out of them;" this money was in turn used to buy other properties and "probably" also for business investments.  (*See* ECF No. 86-10 at 42:18–43:17.)

Plaintiff also cites George's October 3, 2022, deposition in which he states that the Alvarez Trust previously loaned three and a half million dollars to Balesia Towers' foreign entities while Mario was acting as its trustee, which was later repaid by way of Balesia. (*See generally* ECF No. 86-11.)  During his deposition, George was also shown a purported 2019 webpage for Balesia.com that identified Mario as the company's founder, CEO, and shareholder, which George claimed was false.  (*See id.*)  Finally, George was shown purported payments to Mario, Nicholas, Magali, and the Alvarez Trust, which he stated could "possibly" have been made as compensation for work performed.  (*See id.*)

As for documents, Plaintiff cites what it defines as "schedule 8 loans."  (*See* ECF 86-5 at 5.)  The document indicates that Mario took out a loan of $1,430,00 for 75-6130 Alii Drive, Kailua, Kona HI 96740 in 2003 and a loan of $1,600,00 for 401/405 Hill Street, Laguna Beach, CA 92651 in 2005.  (*See id*.)  The document also shows that Balesia, the Alvarez Trust, and Kona made $892,943 in payments toward Mario's loan for the Hawaii property and that Balesia and the Alvarez Trust made $1,628,827 in payments toward Mario's loan for the California property. (*See id*.)  The document does not indicate whether Mario transferred title to the entities paying these loans.

Plaintiff cites two loan applications which confirm that Mario took out the aforementioned loans.  (*See* ECF No. 95-8 (Pl.'s Ex. 17), 95-9 (Pl.'s Ex. 18).)  One application also contains a letter from Mario's Certified Public Account ("CPA") to the

---

[8]      Citations to depositions do not refer to the CM/ECF pagination electronically stamped at the top of each page.  Instead, to maintain consistency with Plaintiff's citations, this Order refers to the pagination provided by the deposition services.

Wells Fargo Mortgage Department, dated December 8, 2005, which explains that Mario is a business consultant who receives "expense reimbursements" from an organization called the Trussnet Corporation. (*See* ECF No. 95-8 at 5.) According to the letter, these reimbursements were deposited into the Alvarez Trust, which in turn paid Mario's American Express bills. (*See id.*) Finally, Plaintiff cites the Expert Report of Beth Chrisman, who analyzed signatures on over 350 documents and determined that several checks bearing the purported signature of Nicholas and Magali were not in fact signed by them but likely by Mario or Darci. (*See* ECF Nos. 95-1–95-7 (Pl.'s Ex. 3).)

Although Plaintiff cites the aforementioned depositions and documents to support its assertion that "Mario has fraudulently transferred assets," (*see* Pl.'s MSJ at 13), only two of Plaintiff's citations relate to the potential transfer of an asset out of Mario's possession: first, Mario's August 31, 2022 deposition indicates that he disposed of his 33% interest in Kona, (*see* ECF No. 86-9 at 12:23–14:3), and second, the letter from Mario's CPA indicates that he transferred certain income to the Alvarez Trust, (*see* ECF No. 95-8 at 5). Yet, Plaintiff has not pointed to any evidence that Mario engaged in these transactions with an "intent to hinder, delay, or defraud" or that he received an unreasonable value in exchange, at least one of which is required for a fraudulent transfer. *See* Cal. Civ. Code § 3439.04(a); *see also* Cal. Civ. Code § 3439.05.

Moreover, as all Parties agree, the UVTA has a seven-year statute of limitations. (*See* Defs.' MSJ at 15–16; Pl.'s MSJ at 15.) Accordingly, a cause of action for fraudulent transfer "is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred." Cal. Civ. Code § 3439.09(c). Because Plaintiff initiated this action on December 31, 2020, only transfers occurring after December 30, 2013, may qualify as fraudulent. (*See generally* Docket.) As for Mario's transfer of income to the Alvarez Trust, the CPA's letter is dated December 9, 2005—meaning any prior transfers referred to in that letter are time-barred. (*See* ECF No. 86-9 at 12:23–14:3.) Additionally, because Mario transferred his interest in Kona to the Alvarez Trust at an unknown time, (*see id.*), a genuine dispute remains as to whether

the transfer occurred within the statute of limitations.  Therefore, Plaintiff is not entitled to summary judgment for these transfers.

Plaintiff's Motion offers several additional legal conclusions that are accompanied by extensive record citations but lacking in substantive factual support.  For example, Plaintiff asserts that "[a]ssets once in Mario's name and now held by one or more of the other Defendants have transferred without any equivalent value or consideration in exchange," (*see id.* at 13–14 (citing "Ex. 7 at 12:23-14:23, Ex. 2 at 20:25-21:4, ECF#86-9 at 12:23-14:3, 14:20-15:8, ECF#86-5S")), and that Mario and his wife Darci still "have full use, control, and frequent[] uninhibited possession" of these assets, (*see* Pl.'s MSJ at 13 (citing "Ex. 10 at 59:10-60:4, Ex. 2 at 20:25-21:13, Ex. 9 at 59:10-60:4, ECF#86-12 at 28:5-25, 28:1-7, 31:25-35:8, #86-5I, #86 at Ex. 19. #86-7 at 6:14-23, #86-3 at pgs 25-31, 33-35, #86-12 at 15:14-23, and #86-17 at Answer to Interrogatory No. 4, all sets")).  Yet Plaintiff's Motion never actually identifies these assets.

It is well established that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp.*, 477 U.S. at 323.  Accordingly, a party cannot support a general legal proposition with hundreds of pages of unexplained record citations and expect the Court to scour that record in search of relevant factual support.  "Judges are not like pigs, hunting for truffles buried in briefs."  *See, e.g.*, *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (quoting *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir.1994)).  Still, in the interest of thorough adjudication, this Court has meticulously analyzed Plaintiff's voluminous record citations.[9]  The Court has found, however, that many of these documents do not contain the pages cited, are not relevant to the

---

[9]    In addition to the aforementioned citations, the Court has also reviewed the following citations from the Fraudulent Transfer Section of Plaintiff's Motion: "Ex. 9 at 17:15-18:12, ECF#86-12 at 32:9-34:16, 55:5-21"; "ECF#85 at Ex. 3 at pgs 25-31, 33-35, ECF#86-6, #86-9 at 68:24-69:25, #86-4A-D, #86-5M-P, R"; "ECF#86-6, #86-4, #86-5, Ex. 9 at 45:22-46:12"; "Ex. 27"; "Ex. 16 at ¶¶ 13-14, 17-21, Ex. 18, Ex. 19, Ex. 20, and Ex. 22"; "#86-11 at 32:9-34:16, 18 55: 5-21"; "Ex. 16 at ¶¶ 14, 16"; and "Ex. 16 at ¶¶ 7, 13-21."  (*See generally* Pl.'s MSJ at 13–14.)

propositions they ostensibly support, or are duplicative.  Ultimately, nearly all of the evidence Plaintiff cites in support its fraudulent transfer claim fails to establish that Mario transferred a particular asset to another party with the intent to avoid creditors within the seven-year statute of limitations.[10]

Only one of Plaintiff's citations merits discussion: a portion of Mario's August 31, 2022, deposition as the person most knowledgeable of the Cancer Foundation.  (*See* Pl.'s MSJ at 13 (citing ECF No. 86-12 at 32:9–34:16, 55:5–21).)  During this deposition, Mario was purportedly shown two checks written to him individually, which he admitted depositing into the Foundation's bank account.  (*See generally* ECF No. 86-12 (Exhibits 11–12).)  This type of transaction is clearly covered by the UVTA as it is a transfer of the debtor's assets to a third-party.  *See* Cal. Civ. Code § 3439.04(a).  However, because Plaintiff did not place these checks on the record, the Court did not know what amount of money was transferred or whether these transfers occurred within the statute of limitations.  Therefore, at the Court's request, Plaintiff supplemented the record with the two checks, referred to in the deposition as Exhibits 11 and 12.  (*See* ECF No. 110 at 22–23.)

Plaintiff's supplemental filing also included one new check and a new deposition excerpt discussing that check.  (*Compare id.* at 21 (Exhibit 10), *with* 86-12 (Exhibits 11–12).)  At the hearing, however, the Court explicitly limited the permissible supplemental filing to the two checks Plaintiff referenced in the deposition excerpts cited in support of its Motion.  (*See* Mot. Tr. at 39:2–9 (permitting Plaintiff to supplement the record with Exhibits 11 and 12).)  Because the new check and new deposition excerpts exceed the

/ / /

---

[10]     Although Plaintiff cites the Declaration of Nathaniel Svette for the proposition that properties once in Mario's name have since been transferred to the Trust, ((*see* Pl.'s MSJ at 14 (citing ECF No. 92-16 ¶¶ 13–14, 17–21)), the Declaration is merely a recitation of the same legal conclusion and is lacking in evidentiary support.  Moreover, the Declaration does not indicate when these transfers occurred or whether Mario made them with the intent to defraud.

scope of permissible supplementation, they are not properly before the Court and the Court declines to consider them.

As for Exhibits 11 and 12, which are properly before the Court, they establish that Mario received a check for $892.17 from the United States Treasury with the memorandum "Tax Refund," (*see* ECF No. 110 at 22 (Exhibit 11)), and a check for $3,960 from Rising Sun LLC with the memorandum "VS for delay," (*see id.* at 23 (Exhibit 12)).  Because these checks were issued in 2016 and 2020, respectively, (*see id.* at 22–23), their potential transfer is not barred by the seven-year statute of limitations. *See* Cal. Civ. Code § 3439.09(c).

Although the check from Rising Sun was written to the order of Mario Alvarez, it is marked as "void."  (*See* ECF No. 110 at 23 (also stating "Void After 180 Days")).) Therefore, viewing the evidence in the light most favorable to the non-moving Party, there appears to be a genuine, if minor, dispute as to whether the check was in fact successfully deposited into the Cancer Foundation's account.   Additionally, even assuming the deposit was successful, there is still a genuine dispute as to whether Mario had an intent to defraud.  During his deposition, Mario stated that this check "should've been written out to either the trust or Kona Beach Bungalows" rather than him personally, but that he was "sure" the money was later transferred to the appropriate entity. (*See* ECF No. 86-12 at 38.)  "In considering a motion for summary judgment, . . . the court . . . is not permitted to weigh the evidence or to judge the credibility of witnesses." *See Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir. 1978).  Here, to find in Plaintiff's favor would require the Court to make a credibility determination and to draw inferences in the moving Party's favor.  *See Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").  The Court declines to do so.

As for the remaining check from the U.S. Treasury, the record demonstrates that Mario transferred the check to the Cancer Foundation "[w]ith actual intent to hinder, delay, or defraud" Plaintiff.  *See* Cal. Civ. Code § 3439.04(a); *see also* Cal. Civ. Code §

3439.05.  This intent is evidenced by Mario's own admissions.  When asked about this check during his deposition, Mario stated that he deposited it into the Cancer Foundation's account because if he deposited it into a personal checking account "ambulance chasers [would] take [his] money away from the checking account."  (*See* ECF No. 86-12 at 34; *accord id.* at 55 (Mario telling opposing counsel that he uses the Cancer Foundation's account to deposit checks because he "do[es]n't want [his] money . . . to go into your hands")).)  Nothing in Mario's deposition or Defendants' briefing contradicts this finding.  In fact, at the hearing, Defense counsel admitted that Mario acted improperly when he misused the Cancer Foundation to cash a check that did not belong to the Foundation.  (*See* Mot. Tr. at 24:2–10.)[11]  Therefore, it is undisputed that Mario made the transfer at issue with the intent to avoid Plaintiff's collection of the Judgment.

There is, however, one final issue to address regarding the U.S. Treasury check.  The check is written to the order of Mario and Darci Alvarez.  (*See* ECF No. 110 at 22.)  Still, Mario had "acquired rights in" the check as community property, *see* Cal. Civ. Code § 3439.06(d), and such property is subject to collection in its entirety, *see* Cal. Fam. Code § 910; *see also In re Lockhart-Johnson*, 631 B.R. 38, 45 (B.A.P. 9th Cir. 2021).  For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for summary adjudication of the fraudulent transfer claim.  Specifically, the Court finds that the $892.17 transfer from Mario to the Cancer Foundation constitutes a fraudulent transfer.  In all other respects, Plaintiff's request for summary adjudication of the fraudulent transfer claim is denied.

/ / /

---

[11]    Defendants do not argue that the Cancer Foundation was a good-faith recipient.  *See* Cal. Civ. Code § 3439.09(a).  Nor could they.  As an entity, the Cancer Foundation's intent can be inferred from the intent of its management.  *See In re Acequia, Inc.*, 34 F.3d 800, 806 (9th Cir. 1994); *accord In re Brobeck, Phleger, & Harrison*, 408 B.R. 318, 339 (Bankr. N.D. Cal. 2009).  As the foundation's CEO, agent for service, and manager, (*see* ECF No. 86-5 at 34 ("Ex. 5-S")), Mario's intent can be imputed to the Foundation.

### 2. *Defendants' Motion*

Defendants also move for summary adjudication of the fraudulent transfer claim. First, Defendants argue that Plaintiff cannot succeed on any fraudulent transfer claim premised upon a co-Defendant's transfer of assets to Mario. (*See* Defs.' MSJ at 15–16.) The Court agrees. *See supra* Section I.B.1. Still, Plaintiff's fraudulent transfer claim is also supported by evidence that Mario transferred assets to his co-Defendants. *See supra* Section I.B.1. Next, Defendants raise a statute of limitations argument, claiming the last transfer of real property from Mario to the Alvarez Trust occurred in November 2006 and is therefore time-barred. (*See* Defs.' MSJ at 16 (citing, admissibly, Ex. 3).) Yet, the record indicates that Mario may have fraudulently transferred other assets, such as his interest in Kona, within that seven-year statute of limitations. (*See, e.g.*, ECF 86-5 at 34; ECF No. 86-9 at 4–6.) Thus, Defendants' statute of limitations argument does not merit summary adjudication in their favor.

Finally, in their Reply brief Defendants make the broad claim that "[t]here is no evidence that Mario transferred any assets to any Defendants." (*See id*.) Yet, as previously discussed, Plaintiff has submitted evidence that creates a genuine dispute as to whether Mario and his co-Defendants have "participated in acts of fraudulent transfer and concealment." (Pl.'s MSJ at 14.) In light of the foregoing, the Court **DENIES** Defendants' Motion for summary adjudication of the fraudulent transfer claim.

### C. *Conspiracy to Commit Fraudulent Transfer and/or Concealment*

Plaintiff has also brought a claim against all Defendants for conspiracy to commit fraudulent transfer and/or fraudulent concealment. (*See* Compl. at 29.) Pursuant to this claim, Plaintiff asks the Court to hold Mario's co-Defendants liable "for the amount of the Judgment they helped Mario Jr. avoid" and "for all such fees and costs and incidental charges incurred by Plaintiff as a result" of the alleged conspiracy. (*See id*. at 30; *see also* Pl.'s MSJ at 15 (citing *Berg & Berg Enter., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 (2005) for the proposition that a co-conspirator is "liable for all

/ / /

acts done by others pursuant to the conspiracy, and for all damages caused thereby").) Both Parties move for summary adjudication of this claim.

According to Plaintiff, common law conspiracy requires: (1) "the formation of a group of two or more" "who have agreed to a common plan" to commit an unlawful act (2) with knowledge of the plan's purpose and an intent to aid in its commission, and (3) who engage in "wrongful conduct in furtherance of the conspiracy," (4) with "damages arising from [such] conduct." (*See* Pl.'s MSJ at 15 (citing *Kidron v. Movie Acquisition Corp.,* 40 Cal. App. 4th 1571, 1582 (1995)); ECF No. 105 at 11 (quoting *Kidron,* 40 Cal. App. at 1581).) *See also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994). Defendants do not appear to dispute these elements. (*See generally* Defs. MSJ; ECF No. 106.)

### 1.   *Plaintiff's Motion*

Plaintiff seeks summary adjudication of the conspiracy claim based on its assertion that the "[e]vidence shows that there was a deliberate and intentional plan and agreement among the Defendants to conceal Mario's assets and income and defraud creditors, including Plaintiff." (Pl.'s MSJ at 15–16.) Plaintiff addresses liability for each Defendant individually, beginning with Mario's Family. (*See id.*) As for Mario's brother George, Plaintiff argues he engaged in a conspiracy because he pays Mario's bills, covers expenses for Mario's children, and allows Mario to live rent-free in his home. (*See id*. at 16.) But, as discussed in Section I.B.1, transfers from George to Mario are not covered by the UVTA. Accordingly, any conspiracy to transfer assets from George to Mario is not a conspiracy to commit fraudulent transfer.

Plaintiff also alleges that "George individually and through various Defendant Entities, is knowingly working in concert with Mario to keep assets and income out of Mario's name, but free for his access, use, and control." (*See id.*) Yet, Plaintiff's Motion does not identify these assets or provide any record citations to support this allegation. (*See id.*) Finally, Plaintiff asserts that George "is in full control over the family assets and works hand in hand with Mario." (*See id.*) This assertion is supported to some

extent by Plaintiff's record citations. (*See id.* at 16–17 (first citing ECF No. 86-9 at 68:24–25, 69:1–21 (Mario, in a deposition, stating money moves between his family and Defendant Entities as dictated by George and Magali without a written agreement); and then citing ECF No. 86-11 at 14:6–23, 20–21 (George, in a deposition, stating Mario was the Alvarez Trust's trustee when it loaned money to Balesia without written agreement)).) Though George's control over the family's assets may be relevant to Plaintiff's conspiracy claim, general evidence of involvement does not, on its own, merit summary adjudication in Plaintiff's favor.

Plaintiff's claims against the rest of Mario's Family fair similarly. Plaintiff argues Mario's son Nicholas engaged in a conspiracy to commit a fraudulent transfer because he is compensated by Defendant Entities for work performed by Mario. (*See* Pl.'s MSJ at 17.) Plaintiff supports this assertion with a single citation to Darci's deposition in which she states that Nicholas visits her and Mario approximately once a week, but that she does not know whether he asks Mario for business advice when he is there. (*See id.* (citing ECF No. 92-4 at 64:8–19).) This citation hardly supports Plaintiff's claim that Nicholas receives compensation on Mario's behalf. Plaintiff also claims that Nicholas conspired by transferring his interest in Kona to the Alvarez Trust and allowing Mario to sign checks on his behalf. (*See id*.) These actions, though supported by the record, do not establish that Nicholas agreed to a plan to help Mario fraudulently transfer assets out of his own name—as required by the UVTA.

As for Magali, Mario's mother, Plaintiff claims she participated in a conspiracy to commit fraudulent transfer by allowing Mario and George to control the Alvarez Trust, for which she is the trustee. (*See id.* at 17–18.) Plaintiff also asserts that Magali "knowingly allows . . . George and Mario to direct her assets and Defendant Entities in her name to further the fraud." (*See id.* at 18 (citing "Ex. 3 at 71:25-72:8, Ex. 9 at 45:22-46:12, and Ex. 8 at 37:19-38:5").) In support of this assertion, Plaintiff cites one of Mario's depositions in which he asserts that he manages rental properties for the Alvarez Trust on a day-to-day basis, (*see* ECF No. 92-9 (Ex. 9) at 45:22–46:12), and Magali's

deposition in which she asserts that she occasionally uses funds from the Alvarez Trust to help Mario and other family members, (*see* ECF No. 92-8 (Ex. 8) at 37:19–38:5). This information does not constitute incontrovertible evidence that Magali knew Mario was fraudulently transferring assets to the Alvarez Trust or engaged in wrongful conduct in furtherance of any such transfers.

Moreover, by Plaintiff's own admission, there is also evidence indicating that Magali did not have the mental state necessary to engage in this conspiracy. According to Plaintiff, Magali claims "ignorance and confusion as to who has access to what," asserting her family "uses assets in [the] Alvarez Trust for their own ends without her permission." (*See* Pl.'s MSJ at 18 (citing "Ex. 8 at 34:11-37:24").) It is well established that the Court cannot make a credibility determination in considering a motion for summary judgment, *see Neely*, 584 F.2d at 344, and must view the evidence in the light most favorable to the non-moving Party, *see Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). Thus, the Court may not discount Magali's claims. In light of the foregoing, the Court concludes that a reasonable trier of fact could find in Magali's favor on the conspiracy claim.

Next, Plaintiff alleges that Mario's wife Darci engaged in a conspiracy to commit fraudulent transfer by providing services to the co-Defendants and improperly signing checks from the Balesia and Kona accounts with others' signatures. (*See* Pl.'s MSJ at 18–19.) Yet, Plaintiff has again failed to identify any fraudulent transfers from Mario that Darci knew about or engaged in. Although signing checks in others' names may constitute fraud, it does not constitute a fraudulent transfer because Darci is not disposing of her assets to avoid collection. Accordingly, a reasonable trier of fact could find in Darci's favor on the conspiracy claim.

Plaintiff also seeks summary adjudication of its conspiracy claims against Defendant Entities—Balesia, the Cancer Foundation, the Alvarez Trust, the 16919 Trust, and Kona. (*See id.* at 19–23.) First, as for Balesia, Plaintiff alleges Balesia conspired to commit fraudulent transfer because George used Balesia's bank account as his own and

paid Mario's loans with money from that account.  (*See id.* at 19.)  Plaintiff similarly claims that the 16919 Trust conspired to commit fraudulent transfer because it is wholly owned by George and was used for the sole purpose of buying a house for Mario.  (*See id.* at 21–22.)  Yet, as previously discussed, the UVTA does not prevent a debtor, such as Mario, from receiving assets from third-parties, such as the 16919 Trust or Balesia.  And while George's use of Balesia's business account and Mario's use of the 16919 Trust's property may support Plaintiff's alter ego arguments, this evidence does not, standing alone, demonstrate that these entities participated in a conspiracy to help Mario fraudulently transfer his own assets.

As for the Alvarez Trust, Plaintiff claims the Trust conspired to commit fraudulent transfer because Mario, who controls the Trust, falsely represented the Trust's assets as his own in communications with financial institutions and used the Trust's assets for personal benefit.  (*See id.* at 20–21.)  Again, although these actions may support an alter ego argument, they are irrelevant to whether the Alvarez Trust helped Mario transfer assets out of his possession to avoid creditors.  As for Kona, Plaintiff claims the entity conspired to commit fraudulent transfer because Mario once owned a portion of the entity but transferred it to the Alvarez Trust.  (*See id.* 22.)  While this may constitute a fraudulent transfer, *see supra* Section I.B.1, Plaintiff has submitted no evidence that Kona, as an entity, had the intent to commit this allegedly fraudulent transfer or that it engaged in conduct in furtherance of it.

As for the Cancer Foundation, the Court's analysis differs.  In California, conspiracy is not an independent "cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  *Applied Equip. Corp.*, 7 Cal. 4th at 510–511.  The Court has already concluded that Mario fraudulently transferred $892.17 to the Cancer Foundation, *see supra* Section I.B.1, and that the Foundation shared Mario's intent to defraud, *see supra* fn. 11.  Because the Court has granted summary judgment on the underlying fraudulent transfer claim, summary

judgment is also appropriate insofar as the civil conspiracy claim against the Cancer Foundation is premised on that transfer.  *Accord Ent. Rsch. Grp. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997) (dismissing conspiracy claim because underlying tort was dismissed).

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for summary adjudication of the conspiracy claim.  Specifically, the Court finds that Mario and the Cancer Foundation engaged in a conspiracy to fraudulently transfer $892.17.  In all other respects, Plaintiff's request for summary adjudication of the conspiracy claim is denied.

### 2.    *Defendants' Motion*

Defendants also move for summary adjudication of the conspiracy claim.  (*See generally* Defs.' MSJ.)  Yet their sole argument is that "[s]ince Defendants have not committed any fraudulent transfers or fraudulently concealed any assets, *a fortiori* they could not have engaged in a conspiracy for acts which have not occurred."  (*Id.* at 16.)  Defendants' argument is premised on the assumption that the Court found no genuine dispute as to the fraudulent transfer claim and dismissed that claim against all Defendants.  Because a genuine dispute remains, however, Defendants' argument necessarily fails.  The Court therefore **DENIES** Defendants' Motion for summary adjudication of the conspiracy claim.

### D.    ***Constructive Trust***

The Complaint seeks a constructive trust for the property, assets, and income of all Defendant Entities—Balesia, the 16919 Trust, the Alvarez Trust, Kona, and the Cancer Foundation.  (*See* Compl. at 30.)  "A constructive trust is an equitable remedy that compels the transfer of wrongfully held property to its rightful owner."  *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 908–09 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (citations omitted); *see also* Cal. Civ. Code §§ 2223–2224.  "A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or

detention of the res by another party who is not entitled to it." *Mattel, Inc.*, 616 F.3d at 909 (citing *Communist Party of U.S. v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995)); *see also Higgins v. Higgins*, 11 Cal. App. 5th 648, 659 (2017).

In the debtor-creditor context, a constructive trust is a remedy for any fraudulent transfer under the UVTA. *See Monastra v. Konica Bus. Machines, U.S.A., Inc.*, 43 Cal. App. 4th 1628, 1645 (1996); Cal. Civ. Code § 3439.07(a)(c); *accord Fulton v. Jansen*, 99 Cal. 587, 591 (1893) ("In most cases of constructive trust, pure and simple, an element of fraud, actual or constructive, is the basis upon which the trust is founded.")  And the statute of limitations to be applied to a constructive trust claim is "determined by the nature of the right sued upon." *See Day v. Greene*, 59 Cal. 2d 404, 411 (1963).  Because Plaintiff's constructive trust claim is premised upon its fraudulent transfer claim, the UVTA's seven-year statute of limitations applies.  Here, both Parties move for summary adjudication of the constructive trust claim.

### 1.   *Plaintiff's Motion*

Plaintiff's Motion for Summary Judgment asks the Court to impose a constructive trust on the following properties based on Mario's "full use and possession of these properties" and "leverage[ of] them as necessary for his own personal financial gain over the years:" (1) Going My Way property currently titled in 16919 Trust's name; (2) 6130 Alii Drive property currently titled in Alvarez Trust's name; (3) 75-3132 Alii Drive property currently titled in Alvarez Trust's name; (4) 81-575 Kaiue Street property currently titled in Alvarez Trust's name; (5) 401 Hill Street property currently titled in Alvarez Trust's name; and (6) 4301 Collins Avenue property currently titled in Alvarez Trust's name.  (*See* Pl.'s MSJ at 29.)  Plaintiff also asserts that Kona and the Alvarez Trust should be held in a constructive trust based on Mario's transfer of his 33% interest in Kona to the Alvarez Trust.  (*See id.*)  Plaintiff has clearly identified the property at issue.

Still, Defendants argue Plaintiff has failed to establish that such property "has been wrongfully acquired or detained by a person not entitled to its possession."  (*See* Defs.'

MSJ at 16.)  As Defendants correctly note, (*see id.* at 17), "[a] constructive trust cannot exist unless there is evidence that property has been wrongfully acquired or detained by a person not entitled to its possession," *Communist Party*, 35 Cal. App. 4th at 991. Property is "wrongfully acquired" when it is gained by "fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act."  *See* Cal. Civ. Code § 2224. Here, Plaintiff has not alleged that any of the six properties identified above were fraudulently transferred.  (*See generally* Pl.'s MSJ at 12–15.)  And as for Mario's disposal of his Kona interest, the Court previously concluded that summary adjudication of the fraudulent transfer claim is not warranted for this transaction.  *See supra* Section I.B.1.

In response, Plaintiff argues that summary adjudication of the constructive trust claim is appropriate because the Alvarez Trust could have "wrongfully acquired" the Kona interest and properties without engaging in a fraudulent transfer.  (*See* ECF No. 104 at 9–10.)  The Court agrees.  *See* Cal. Civ. Code § 2224.  Still, Plaintiff has failed to present any evidence as to how these assets were wrongfully acquired in another way. Moreover, "[b]efore a court can impose a constructive trust on the basis of a defendant's wrongful acquisition or retention of property under Civil Code sections 2223 or 2224, there must be some other party rightfully entitled to that property."  *Communist Party*, 35 Cal. App. 4th at 991.  And Plaintiff has failed to explain why it is rightfully entitled to the properties at issue.  In sum, genuine disputes remain.  Therefore, the Court **DENIES** Plaintiff's Motion for summary adjudication of the constructive trust claim.

### 2.   *Defendants' Motion*

Defendants also move for summary adjudication of the constructive trust claim, but their argument is lacking in detail.  (*See generally* Defs.' MSJ at 16–18.)  Much like their argument for summary adjudication of the conspiracy claim, Defendants' argument for summary adjudication of the constructive trust claim briefly asserts that because Defendants have not engaged in any wrongful conduct, there is no basis for the imposition of a constructive trust.  (*See id.*)  Defendants, however, fail to present any

evidence that demonstrates the absence of a genuine dispute as to whether the properties at issue were wrongfully acquired.   At the summary judgment stage, the burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *See Celotex*, 477 U.S. at 323.   The moving party must identify those portions of the record that demonstrate the absence of a dispute, or they must explain why the opposing party's evidence fails to establish a genuine dispute.  *See id.*; *see also* Fed. R. Civ. P. 56(c)(1). Because Defendants have done neither, the Court **DENIES** their Motion for summary adjudication of the constructive trust claim.

### E.    Alter Ego

The Complaint seeks a declaration that Defendants are alter egos of one another, rendering each jointly and severally liable for Mario's Judgment.  (*See* Compl. at 31–32.) The alter ego doctrine is an equitable doctrine that allows a plaintiff to "pierce the veil" and hold an individual liable when they use an entity to "perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose."   *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000).  In these situations, the entity's actions will be attributed to those individuals actually controlling that entity. *See id*.

The alter ego doctrine also supports "reverse piercing," which allows a plaintiff to reach the assets of an entity to satisfy a debt owed by an individual.   *See In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010); *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1390 (9th Cir. 1993); *cf. Torrey Pines Bank v. Hoffman*, 231 Cal. App. 3d 308, 313 (1991).  Reverse piercing may be applied to trusts, *see In re Schwarzkopf*, 626 F.3d at 1038, and limited liability companies, *see Curci Invs., LLC v. Baldwin*, 14 Cal. App. 5th 214, 222 (2017), but not to corporations, *see Postal Instant Press, Inc. v. Kaswa Corp.,* 162 Cal. App. 4th 1510, 1522–24 (2008).

To apply the alter ego doctrine, a Plaintiff must prove (1) there is "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of [the two] do not in reality exist" and (2) there will be "an inequitable

result if the acts in question are treated as those of the corporation alone." *See, e.g.*, *No Cost Conf., Inc. v. Windstream Commc'n, Inc.*, 940 F. Supp. 2d 1285, 1298 (S.D. Cal. 2013) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003)); *see also Sonora Diamond Corp.*, 83 Cal. App. at 538.  Several factors may be considered when determining whether the doctrine should apply, including: (a) the commingling of funds and assets between entity and individual, (b) the individual's treatment of the entity's assets as its own, (c) the disregard of legal formalities, and (d) the diversion or manipulation of assets to the detriment of creditors by, for example, concentrating assets in once place and liabilities in another.  *See In re Schwarzkopf*, 626 F.3d at 1038 (citing *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825, 838–40 (1962)); *see also Associated Vendors, Inc.*, 210 Cal. App. at 838–40 (listing additional factors and collecting cases).  No one factor is dispositive.  Here, both Parties move for summary adjudication of the alter ego claim.

### 1.   *Plaintiff's Motion*

Plaintiff moves for summary adjudication of the alter ego claim and seeks a "declaration that Defendants are alter egos of Mario and as applicable, each other" such that Plaintiff may collect its Judgment against Mario from his co-Defendants.  (*See* Pl.'s MSJ at 23.)  Specifically, Plaintiff asks the Court to declare the following Parties alter egos of one another: George and Mario, (*see id.* at 25), the Cancer Foundation and Mario, (*see id.* at 26), the Alvarez Trust and Mario, (*see id.* at 27), the 16919 Trust and Mario, (*see id.*), and Kona and Mario, (*see id.* at 28).  Although Plaintiff's Motion appears to suggest that various other entities and individuals act on behalf of one another, it does not explicitly seek an alter ego declaration for these other relationships.  (*See, e.g.*, *id.* at 25 (claiming "Nicholas allows the family to use and abuse his financial identity" but failing to identify any specific alter ego relationship between Nicholas and another entity or individual).)

Although Plaintiff seeks summary adjudication of the alter ego claim as to George and Mario, it cites no case law for the proposition that a natural person can be the alter

ego of another natural person.  (*See generally id.* at 25.)  Traditionally, the alter ego doctrine is applied between a person and an entity, not between two persons.  *See, e.g.*, *Postal Instant Press, Inc.*, 162 Cal. App. 4th at 1513.  Absent legal support for an extension of the alter ego doctrine, the Court declines to consider the propriety of summary adjudication of the alter ego claim as to George and Mario.  As for the remaining Defendants—the Cancer Foundation, Alvarez Trust, 16919 Trust, and Kona— because they are limited liability companies and trusts, the law clearly permits reverse piercing.  *See, e.g.*, *In re Schwarzkopf*, 626 F.3d at 1038; *Curci Invs., LLC*, 14 Cal. App. 5th at 222.  Still, as for these relationships, Plaintiff's arguments fail for other reasons.

Plaintiff's only argument for summary adjudication of the alter ego claim as for Mario and the Cancer Foundation is that "[u]nder oath, Mario stated that this entity is used as his personal account for depositing personal checks whenever it is needed." (*See* Pl.'s MSJ at 26.)[12]  Although personal use of an entity's account can serve as evidence of an alter ego relationship, it is not alone sufficient to merit summary adjudication.  To prevail at the summary judgment stage, Plaintiff must establish—beyond genuine dispute—that there is "such a unity of interest and ownership" between Mario and the Cancer Foundation such that the "separate personalities" of two do not in fact exist.  Moreover, as an equitable remedy, reverse-piercing is only available in the "rare situation" in which legal remedies are unavailable or insufficient.  *See Curci Invs., LLC*, 14 Cal. App. 5th at 223.  Plaintiff has failed to explain why a legal remedy, such as a fraudulent transfer claim, would be insufficient here.

Next, Plaintiff argues that Mario and the Alvarez Trust are alter egos because Mario exerts complete control over the Trust's assets and business decisions, although he

---

[12]  In support of this proposition, Plaintiff cites "Ex. 5 at 34:7–16." (*See* Pl.'s MSJ at 26.)  Although Exhibit 5, which was attached to Plaintiff's Motion for Summary Judgment, does not contain the pages and lines cited, the same proposition is supported by a deposition attached to Plaintiff's Motion for Prejudgment Writ of Attachment as Exhibit 11.  (*See* ECF No. 86-12 at 33–34.)  The Court will consider the Exhibit.  *See* Fed. R. Civ. P. 56(c)(3).

is no longer the trustee.  (*See* Pl.'s MSJ at 26–27 (citing "Ex. 8 at 37:19-38:5, Ex. 2 at 36:21-24, and Ex. 9 at 57:19-58:6").)  Plaintiff also asserts that the Alvarez Trust pays Mario's bills instead of paying Mario a wage, which would be subject to creditor collection.  (*See id.*)  Additionally, Plaintiff claims Mario "is free to claim trust properties as his own for any reason and at any time, and even to make representations of ownership to financial institutions for his own benefit."  (*See id.* at 27 (citing "ECF#85 at Ex. 17 at pgs. 1634, 1636, #85 at Ex. 18 at pg. 1641, ECF#86-13, #86-18").  Plaintiff also claims that Kona and Mario are alter egos.  (*See id.* (citing "Ex. 14, Ex. 8 at 28:13-25, 29, 30:1-13" and "Ex. 25 at 1").)  And because Kona is wholly owned by the Alvarez Trust, the alter ego analysis for the two entities is quite similar.

The evidence presented by Plaintiff strongly indicates a unity of interest between the Alvarez Trust and Mario as well as Kona and Mario.  Indeed, throughout its Motion Plaintiff presents evidence that the Alvarez Trust, Kona, and Mario have co-mingled funds and disregarded record-keeping requirements and legal formalities; that Mario has treated the assets of the Trust as his own; and that Mario has purposefully used and manipulated the Trust's assets to avoid his creditors.  Moreover, by transferring property from the Trust into his own name to acquire loans and later transferring that property back to the Trust, Mario appears to have intentionally concentrated all liabilities in himself while keeping all assets with the Trust.  These actions are strong indicators that Mario and the Trust share a unity of interest.  *See, e.g.*, *In re Schwarzkopf*, 626 F.3d at 1039; *Associated Vendors, Inc.,* 210 Cal. App. at 838–40.

Furthermore, Plaintiff may not have a legally sufficient remedy because its fraudulent transfer claim only applies to transfers from Mario to the Alvarez Trust, not Mario's use of the Trust to directly pay his bills or buy property or other assets for his benefit.  Still, the Court finds summary judgment improper because record evidence also weighs against an alter ego declaration—specifically evidence that Mario is not the only beneficiary of the Trust.  Typically, when a court holds a trust or limited liability company liable for the debts of an individual, the debtor is the primary, if not exclusive,

beneficiary-in-fact of the trust or owner-in-fact of the limited liability company.  *See e.g.*, *Curci Invs., LLC*, 14 Cal. App. 5th at 222 (holding an LLC liable for the defendant's debts when defendant held 99% of the LLC and his wife, also liable for the debt, held 1%).

Here, however, the record indicates that the beneficiaries of the Alvarez Trust include not only Mario, but also Magali's other children and grandchildren.  (*See* ECF No. 92-21 at 32.)  Additionally, the Alvarez Trust was created over ten years before the Judgment was entered against Mario, and it was not created by Mario but by his parents. (*See id.* at 30–31.)  Moreover, according to Magali, only her and her husband have put assets into the Trust.  (*See id.* at 34.)  Absent evidence to the contrary, the Court cannot assess the credibility of these assertions.  *See Neely*, 584 F.2d at 344.  Because piercing the veil is an equitable remedy, courts commonly consider whether piercing would harm "innocent" members of a trust or limited liability company.  *See, e.g.*, *Curci Invs., LLC*, 14 Cal. App. 5th at 222; *Postal Instant Press, Inc.*, 162 Cal. App. at 1523–24.  Here, the Court concludes that a genuine dispute remains as to whether innocent parties would be harmed if the Alvarez Trust and Kona were declared Mario's alter egos.

Finally, Plaintiff asks the Court to declare Mario and the 16919 Trust alter egos because the 16919 Trust has "no purpose beyond allowing Mario to hold title to property without subjecting it to his creditors."  (Pl.'s MSJ at 27 (citing "ECF#86-15 at 14:5-10, 15:2-4, 19:13-20:7, 21:13- 22:2").)  "In spite of the fact that 16919 Trust ostensibly owns [a] property," Plaintiff argues, "Mario exercises complete control over [that] property, pays no rent, and is allowed to use the property in perpetuity."  (*See id.* (citing "ECF#86-8 at 17:5-18:3, Ex. 1 at 21:23-22:4").)  The evidence cited by Plaintiff establishes that Mario and Darci live in the 16919 Trust's property but do not pay rent.  (*See* ECF No. 86-8 at 17:5–18:3.)  Furthermore, based on the Court's own examination of the record, *see* Fed. R. Civ. P. 56(c)(3), it concludes that the 16919 Trust's only assets are the aforementioned property and the furniture within that property, (*see* ECF No. 92-1 at 22).
/ / /

In light of the foregoing, the Court concludes that Mario and Darci appear to be the primary beneficiaries of the 16919 Trust. And, "under California law, trust beneficiaries hold an equitable interest in trust property and are 'regarded as the real owner[s] of [that] property.'" *In re Schwarzkopf*, 626 F.3d at 1039 (alterations in original) (quoting *Steinhart v. County of L.A.*, 47 Cal. 4th 1298, 104 (2010)). In *Schwarzkopf*, for example, the Ninth Circuit affirmed the lower court's finding that a trust was the debtor's alter ego when that trust "purchased a home where [the debtor] lived rent-free, paid maintenance expenses for another home where he lived, again rent-free, and paid [the debtor] at least $105,000 in unexplained fees." 626 F.3d at 1039. Unlike Mario and Darci, however, the defendant in *Schwarzkopf* used his own company's assets to fund the trust. *See id.* at 1035, 1039. Here, by contrast, the 16919 Trust appears to have been created by George through an LLC, and the source of the Trust's funds is unclear. (*See* Att. Mot. at 14, 17; ECF Nos. 86-4 at 7, 86-5 at 34, 86-6, 86-8 at 6.) Although there is very strong evidence of a unity of interest between Mario and the 16919 Trust, the aforementioned factor weighs against a finding that the two are alter egos. Accordingly, a genuine dispute remains as to whether it is equitable to declare the 16919 Trust Mario's alter ego. For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for summary adjudication of the alter ego claim.

### 2. *Defendants' Motion*

Defendants also move for summary adjudication of Plaintiff's alter ego claim. (*See generally* Defs.' MSJ at 16–18.) In an argument nearly identical to their constructive trust argument, Defendants assert that the alter ego doctrine cannot apply because Defendants have not engaged in any wrongful conduct. (*See id.* at 18.) For the same reasons discussed in Section I.D.2, the Court **DENIES** Defendants' Motion for summary adjudication of the alter ego claim.

### F.  *Doe and Roe Defendants*

In addition to Mario, Mario's Family, and the Defendant Entities, the Complaint also names ten fictitious Doe Defendants and ten fictitious corporate Roe Defendants.

(*See generally* Compl.)   Although the Federal Rules of Civil Procedure require a complaint to name all parties, *see* Fed. R. Civ. P. 10(a), the Ninth Circuit has generally held that a "plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).   Here, the deadline to complete discovery has passed and Plaintiff has not yet named or served the Doe or Roe Defendants.   (*See generally* Docket.)

Federal Rule of Civil Procedure 4(m) provides that a court may, upon notice to the plaintiff, dismiss any defendant who is not timely served.   *See* Fed. R. Civ. P. 4(m). Moreover, Rule 56(f) allows the court to grant summary judgment *sua sponte* for a non-moving party when the moving party is given notice.   Fed. R. Civ. P. 56(f).   At the hearing, the Court provided Plaintiff with notice of its intent to dismiss the unnamed Defendants, and Plaintiff agreed that dismissal is appropriate.   (*See* Mot. Tr. at 3:1–10.) Accordingly, the Court **DISMISSES** Does I through X and Roes XI through XX pursuant to Rules 4(m) and 56(f).

## II.   Motion for Prejudgment Writ of Attachment

Plaintiff seeks a prejudgment writ of attachment pursuant to the UVTA and Title 6.5 of California's Code of Civil Procedure.   (*See generally* Att. Mot.)   Defendants oppose the Motion.   (*See generally* Att. Opp.)

### A.   *Procedural Requirements*

As a preliminary matter, a plaintiff's application for a writ of attachment must contain certain information, *see* Cal. Civ. Proc. Code § 484.020, and must be accompanied by an affidavit, *see* Cal. Civ. Proc. Code § 483.030.   As required by Section 484.020, Plaintiff's Motion includes: (1) a statement that the attachment is sought to recover on a claim "upon which attachment can be issued," (*see* Att. Mot. at 11); (2) a statement that the amount to be secured by attachment is $24,949,714.85, (*see* ECF No. 86-1, "Svette Decl." ¶ 15); (2) a statement that "attachment is solely and exclusively

sought to aid in recovery on the present claim brought in this lawsuit and for no other purpose," (*see* Att. Mot. at 11; *see also* Svette Decl. ¶ 16); and (4) a detailed description of the property to be attached, which is, in short, all property belonging to: Balesia, Kona, the 16919 Trust, the Alvarez Trust, the Cancer Foundation, and Mario, Darci, Nicholas, and George Alvarez, (*see* Svette Decl. ¶ 17).   *See also* Cal. Civ. Proc. Code § 484.020(a)–(c), (e).   Although the Motion does not contain "[a] statement that the applicant has no information or belief that the claim is discharged in a proceeding under Title 11 of the United States Code (Bankruptcy) or that the prosecution of the action is stayed in a proceeding under Title 11 of the United States Code (Bankruptcy)" as required by Section 484.020(d), *see* Cal. Civ. Proc. Code § 484.020(d), Plaintiff made such a representation on the record at the May 4, 2023 hearing, (*see* Mot. Tr. at 39:12–40:3), and Defendants stipulated to the same, (*see id.* at 40:4–5).   Plaintiff's Motion was also accompanied by a sworn declaration from Nathaniel Svette, (*see generally* Svette Decl.), as required by Section 484.030.   Therefore, Plaintiff's Motion meets the strict procedural requirements for a writ of attachment.

### B.  *Substantive Requirements*

If the foregoing procedural requirements are satisfied, a court may issue a right to attach order if it finds: (1) the claim at issue is one upon which attachment may in fact be based; (2) it is more likely than not that Plaintiff will succeed on that claim; (3) attachment is sought only to recover on that claim; and (4) the amount to be secured by the attachment is greater than zero.   *See* Cal. Civ. Proc. Code § 484.090(a).

First, Plaintiff asserts that all of its claims are ones for which attachment is proper. (*See* Att. Mot. at 12.)   This assertion is based on Plaintiff's "understanding of California law, which specifically allows attachment in cases of Fraudulent Concealment and when the claim is based on a contract for a sum certain of money, such as here." (Svette Decl. ¶ 9.)   First, Plaintiff asserts that "the underlying Judgment agreed to by Mario in this case clearly qualifies as a contract." (Att. Mot. at 12.)   Defendant does not challenge this assertion. (*See generally* Att. Opp.)   Thus, the Court accepts that the Parties have an

implied contract.  Still, attachment must be premised upon a claim that has actually been brought by the plaintiff, and here, Plaintiff has not brought a breach of contract claim. (*See generally* Compl.)  Therefore, Plaintiff does not have a pending contract claim upon which attachment may be based.  Still, attachment may be properly based on Plaintiff's fraudulent transfer claim pursuant to California Civil Code § 3439.07.  *See* Cal. Civ. Code § 3439.07.  And Defendants agree.  (*See* Att. Opp. at 8.)  Thus, attachment may be premised upon Plaintiff's fraudulent transfer claim.  As for the three remaining claims in this action, Plaintiff has not demonstrated that attachment may be based on a civil conspiracy claim, constructive trust claim, or alter ego claim.  Thus, for attachment purposes, the Court will consider only the fraudulent transfer claim.

Next, Plaintiff must establish the "probable validity" of its fraudulent transfer claim, meaning Plaintiff must demonstrate that it is more likely than not that it will succeed on this claim.  *See* Cal. Civ. Proc. Code § 484.090(a)(2).  Although Plaintiff has interpreted this element as requiring the establishment of "the probable validity of the case" as a whole, (*see* Att. Mot. at 12), the law only requires Plaintiff to establish the probable validity of the claim upon which attachment is based, *see* Cal. Civ. Proc. Code § 484.090(a)(2).  Because attachment may only be based on Plaintiff's fraudulent transfer claim, the Court need only analyze the probable validity of that claim.

Plaintiff's probable validity argument for the fraudulent transfer claim raises many of the same arguments as its Motion seeking summary adjudication of the same claim. (*Compare* Att. Mot. at 14–15, *with* Pl.'s MSJ at 12–15.)  Specifically, Plaintiff alleges it "discovered transactions showing that Mario, aware of his debts and obligations to creditors, utilized unassuming bank accounts, such as the non-profit Foundation and Alvarez Trust, to hold his own assets far beyond the reach of lawful creditors." (*See* Att. Mot. at 8.)  In support of this proposition, Plaintiff cites to the depositions discussed in Section I.B.1, in which Mario admitted depositing two checks made out to him into the Cancer Foundation's bank account.  (*See id.* (citing ECF No. 86-12 at 33:22–34:16, 37:17–38:18, and 55:5–21).)

As for Mario's transfer of the U.S. Treasury Check, the Court has already granted Plaintiff's request for summary adjudication as to that transaction. *See* Section I.B.1. Accordingly, Plaintiff's request for prejudgment attachment is moot as to that transfer. *See, e.g.*, *Egrovich*, 2022 WL 485006, at *6; *JP Morgan Chase Bank*, 2014 WL 12531091, at *7. The Court may, however, consider attaching the amount of the check from Rising Sun, which Mario allegedly fraudulently transferred to the Cancer Foundation. Still, based on the evidence presented, the Court cannot conclude that Plaintiff is likely to succeed on its fraudulent transfer claim as for that transaction. As discussed in Section I.B.1, without an evidentiary hearing, the Court cannot conclude that Mario intended to defraud Plaintiff when he deposited the Rising Sun Check into the Foundation's bank account. (*See, e.g.*, ECF No. 86-12 at 38 (Mario stating he believed "[t]he check should've been written out to either the [Alvarez] trust or Kona Beach Bungalows.") Based on the evidence before the Court, it is also likely that Mario intended to return the check to the rightful recipient. (*See id.*) Moreover, the evidence indicates that the check may have been "void," thereby precluding the alleged transfer. (*See* ECF No. 110 at 23.) Because of this conflicting evidence, the Court is unable to determine the probable validity of the fraudulent transfer claim as to this check. As for the remaining transactions discussed in the Writ of Attachment Motion, the fraudulent transfer claim also does not have probable validity.

Furthermore, Plaintiff has not established that attachment is sought for the limited purpose of recovering on its fraudulent transfer claim. *See* Cal. Civ. Proc. Code § 484.090(a)(3). When attachment is premised upon a fraudulent transfer claim under the UVTA, the amount to be attached must be limited to "the value of the asset transferred" or "the amount necessary to satisfy the creditor's claim, *whichever is less*." *See* Cal. Civ. Code § 3439.08 (emphasis added). Plaintiff argues that the amount to be attached should not be "limited to assets that are directly related to the specific transfers Plaintiff seeks to void," (Att. Reply at 3), and instead asks the Court to attach all property owned by all Defendants, (*see* Svette Decl. ¶ 17), in order "to secure the entire renewed Judgment

amount plus accrued interest as well as other damages (fees and costs)"—a total in excess of $24,949,714.85, (*see id.* ¶ 15).  Plaintiff has therefore admitted that it seeks attachment for a purpose other than sole recovery on its fraudulent transfer claim.  This is improper under Section 484.090(a)(3).

In sum, because the Court has already granted summary judgment as to one fraudulent transfer, any request for prejudgment attachment premised on that transfer is rendered moot.  As for the remaining transactions, Plaintiff has failed to establish the probable validity of its fraudulent transfer claim.  Additionally, Plaintiff has admitted that attachment is sought for a purpose other than recovery on these fraudulent transfer claims.  Therefore, the Court **DENIES** Plaintiff's Motion for Prejudgment Writ of Attachment.

## CONCLUSION

For the foregoing reasons the, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment or Alternatively Partial Summary Judgment (ECF No. 92).  Specifically, the Court **GRANTS** summary adjudication in Plaintiff's favor insofar as the $892.17 transfer from Mario to the Cancer Foundation constitutes a fraudulent transfer and insofar as Mario and the Cancer Foundation conspired to commit this transfer, but the Court **DENIES** summary adjudication in all other respects.  The Court also **DENIES** Defendants' Motion for Summary Judgment or Alternatively Partial Summary Judgment (ECF No. 97) as well as Plaintiff's Motion for Prejudgment Writ of Attachment (ECF No. 86).  Finally, the Court *sua sponte* **DISMISSES WITHOUT PREJUDICE** Does I through X and Roes XI through XX.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The Clerk of Court **SHALL TERMINATE** the Doe and Roe Defendants from the Docket.

   **IT IS SO ORDERED.**

Dated:  June 29, 2023

_____

Honorable Todd W. Robinson
United States District Judge